Milan R. AYERS and Thornton G. Dewey, Individually and as a partnership d/b/a Milan R. Ayers Oil & Gas Company, Plaintiffs,

v.

SECURITIES AND EXCHANGE COMMISSION, Defendant.

No. CV-79-85-GF.

United States District Court, D. Montana, Great Falls Division.

Jan. 11, 1980.

William D. Symmes, Witherspoon, Kelly, Davenport & Toole, Spokane, Wash., William P. Conklin, Dzivi, Conklin, Johnson & Nybo, Great Falls, Mont., for plaintiffs.

George N. Prince, Steven Anderson, Seattle, Wash., Michael K. Wolensky, David A. Knight, Securities Exchange Commission, Washington, D.C., for defendant.

## MEMORANDUM

HATFIELD, District Judge.

This action is before the court on the motions of plaintiffs to stay defendant Security and Exchange Commission's ("SEC") investigation of plaintiffs. Plaintiffs seek the stay pending discovery by plaintiffs into the motives behind the SEC investigation. Plaintiffs have also moved, pursuant to Rules 6(d) and 30(a), F.R.Civ.P., for leave to take early discovery. Plaintiffs allege that this court has jurisdiction over these motions pursuant to 28 U.S.C. §§ 1331(a) (federal question), 1337(a) (legislation under Commerce Clause).

The court shall state the facts as briefly as practicable. Plaintiffs, Milan R. Ayers and Thornton G. Dewey, have brought this action individually and as a partnership doing business as the Milan R. Ayers Oil and Gas Company. Plaintiffs are engaged in the business of exploring for, developing

and producing natural gas and petroleum in Toole and Pondera Counties, Montana.

Defendant SEC is the federal administrative agency entrusted with the duty and power to regulate and control transactions in securities. Defendant SEC has made plaintiffs the subjects of two separate administrative investigations. In this action, plaintiffs question the propriety of the later investigation.

In September, 1978, the SEC's Seattle, Washington Regional Office initiated a preliminary administrative investigation into price and trading volume fluctuations in the common stock of Nesco Mining Corporation ("Nesco"), a Washington corporation. According to press releases and other published reports, the Ayers partnership had agreed to tender to Nesco a two percent working interest in certain oil and gas leases and an evaluation of Nesco mining claims in exchange for 650,000 shares of Nesco stock. The SEC believed that these public statements may have contained false or misleading statements violative of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5.

During the Nesco investigation, the SEC learned that the Ayers partnership partially financed its exploratory drilling programs through the sale of undivided fractionalized interests in oil and gas leases. On October 25, 1978, the SEC commenced a separate preliminary administrative investigation to determine whether these lease interest sales were violative of the registration and antifraud provisions of 15 U.S.C. §§ 77e, 77q(a), and 78j(b). The Ayers investigation commenced with an SEC letter of inquiry to Ayers and Dewey, requesting detailed information on the oil and gas lease sales. In a letter dated November 7, 1978, counsel for plaintiffs stated that "we will make every effort to have available for you the information you request by December 1, 1978." Plaintiff's counsel, however, did not supply the information.

On November 7, 1978, the SEC ordered a formal private investigation in the Nesco matter pursuant to 15 U.S.C. §§ 77t(a) and 78u(c). The SEC expanded its Nesco investigation to include an investigation of plaintiffs' sale of fractional interests in oil and gas leases. During November and December, 1978, SEC representatives contacted numerous business associates of plaintiffs, served an administrative subpoena duces tecum on plaintiffs' bank in Shelby, Montana, subpoenaed the testimony and records of plaintiffs' accountant, subpoenaed plaintiffs' testimony and business records, made inquiries at the Great Falls, Montana bank which had under consideration a proposal to finance a group of plaintiffs' joint venturers, and questioned representatives of the Montana Power Company, the purchaser of all of the natural gas produced from plaintiffs' wells.

Plaintiffs allege that, in the course of the SEC representatives' contacts with these third parties, the SEC representatives made statements which implied that plaintiffs were engaging in illegal schemes designed to defraud their business associates, banks and the general public.

On February 9, 1979, the SEC filed an action in the United States District Court for the Eastern District of Washington to preliminarily enjoin Nesco, Nesco President Bruce McNett, Ayers, Dewey and the Milan R. Ayers Oil and Gas Company from disseminating allegedly false and misleading publicity about the Nesco-Ayers partnership agreements.

As part of its discovery in the Nesco civil action, the SEC on or about May 3, 1979, served notices of deposition, subpoenas duces tecum and a request for production of documents upon plaintiffs, their accountant, a representative of what plaintiffs term their most valued group of joint venturers and the accountant for the joint venturers. The requested discovery related not to the Nesco press releases but to plaintiffs' oil and gas business.

On May 9, 1979, plaintiffs moved the Washington district court for a protective order and for an order quashing the Nesco subpoenas, contending that the inquiries into the Ayers lease interest sales were unrelated to the Nesco litigation. The

court stayed the SEC from taking the depositions, without prejudice to the SEC to further investigate "the matters in question by proceedings under section 20(a) of the Securities Act of 1933 and section 21(a) of the Securities Exchange Act of 1934."

During the course of the *Nesco* litigation, the SEC continued its administrative investigation into the Ayers lease sales. The SEC's Seattle regional office issued a second letter of inquiry on March 5, 1979, advising Ayers and Dewey that it had received no response to the October 25, 1978 letter, and asking them to advise the SEC when the response would be made. Counsel for the SEC has stated in an affidavit that plaintiffs' counsel said in a March 22, 1979 telephone conversation that plaintiffs would promptly provide the requested information. Plaintiffs, however, did not provide the information.

On June 19, 1979, the SEC ordered a formal private investigation of plaintiffs pursuant to Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934. The avowed purpose of the investigation was to determine the accuracy of an SEC staff report that tended to show that plaintiffs had made untrue statements of material facts and failed to state other material facts in selling to the public fractional working interests in oil and gas rights. The investigative order designated certain SEC employees as officers of the Commission and empowered them to administer oaths and affirmations, subpoena witnesses, compel witnesses' attendance, take testimony, require the production of any books, papers, correspondence, memoranda or other records deemed relevant and material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

On July 26 and 27, 1979, the court held a preliminary injunction hearing in the *Nesco* case. On September 4, 1979, the court found that Nesco President McNett had unintentionally misled the public in the dissemination of information concerning the relationship between Nesco and Milan R. Ayers Oil & Gas Company. The court therefore granted the SEC a preliminary injunction against McNett and Nesco only to the extent of requiring them to make a public announcement disclosing all material facts about the publicity concerning the relationship of Nesco and Milan Ayers Oil & Gas Company. The preliminary injunction against McNett and Nesco was so narrowly framed because the court found that it was not likely that McNett was likely to make similar misleading statements in the future.

Where the SEC's showing against McNett and Nesco was far from overwhelming, the court found that the proof against plaintiffs was nonexistent. Because the court concluded that the SEC had failed to prove that Ayers or Dewey made any misleading statements whatsoever, the court denied the SEC's motion for a preliminary injunction against Ayers, Dewey and the Milan R. Ayers Oil & Gas Company.

On September 13, 1979, little more than a week after the *Nesco* ruling, the SEC issued numerous subpoenas pursuant to the SEC's June 19, 1979 formal order of private investigation. The SEC directed the subpoenas to plaintiff Ayers, to plaintiffs' accountant, to the president of plaintiffs' principal bank, to Montana Power Company, the purchaser of all of the natural gas produced at plaintiffs' wells, and to the accountants and attorney for a group of Great Falls residents who are joint venturers with plaintiffs. The subpoenas demanded both testimony and the production of records and documents, scheduled to take place during the week of October 8, 1979.

Plaintiffs filed this action on October 9, 1979, to enjoin the administrative investigation or in the alternative to quash the subpoenas. This court ordered discovery stayed until further order of the court.

Plaintiffs seek an order staying the SEC investigation pending a discovery on the issue of motives of the SEC in initiating the investigation and the resultant propriety of the investigation itself. The SEC has responded that this court lacks jurisdiction to enjoin an SEC administrative investigation, and alternatively that the record does not show an improper SEC motivation for the investigation.

## I. JURISDICTION

The court begins with the recognition that the SEC's investigatory powers are extremely broad. "The Commission may, in its discretion, make such investigation as it deems necessary to determine whether any person has violated or is about to violate any provision of this chapter (the securities laws) . . . ." 15 U.S.C. § 78u(a).

. . . The Commission is not required by statute or the Constitution to limit its investigations to those against whom 'probable' or even 'reasonable' cause to suspect a violation has been established. The Commission has, as the Supreme Court said of the Federal Trade Commission in *United States v. Morton Salt,* 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401 (1950), a power of 'original inquiry'. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614 (1946).
*S.E.C. v. Howatt,* 525 F.2d 226, 229 (1st Cir. 1975).

The investigatory powers of the SEC have been analogized to those of a grand jury. *See, Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *S.E.C. v. First Security Bank of Utah,* 447 F.2d 166, 168 (10th Cir. 1971).

While recognizing that the SEC must have great latitude and freedom from undue judicial interference in conducting agency investigations, the agency discretion is not unfettered. The Supreme Court has long recognized that "[a]rbitrary power and the rule of the Constitution cannot both exist. . . . To escape assumptions of such power on the part of the three primary departments of government, is not enough. Our institutions must be kept free from the appropriation of unauthorized power by lesser agencies as well." *Jones v. S.E.C.,* 298 U.S. 1, 24, 56 S.Ct. 654, 661, 80 L.Ed. 1015 (1936).

■ The courts have thus held that, in a subpoena enforcement action, the recipient of any agency subpoena may challenge the reasons behind the subpoena's issuance. If the subpoena was issued "for an improper purpose, such as to harass . . . or for any other purpose reflecting on the good faith of the particular investigation," it shall not be enforced by the courts. *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The holding in *Powell,* a case involving an Internal Revenue Service investigation, is equally applicable in SEC subpoena enforcement actions brought under 15 U.S.C. §§ 77v(b) and 78u(c). *See, e. g., S.E.C. v. Arthur Young & Co.,* 190 U.S.App.D.C. 37, 43, 584 F.2d 1018, 1024 n.39 (D.C.Cir. 1978); *S.E.C. v. Brigadoon Scotch Dist. Co.,* 480 F.2d 1047, 1056 (2d Cir. 1973).

■ The SEC claims that plaintiffs' opportunity to raise their defenses to the investigation in any subsequent summons enforcement action which the SEC might bring provides plaintiffs with an adequate remedy at law. The harm which plaintiff seeks to prevent, however, is not merely the necessity of having to answer subpoenas directed to themselves. Plaintiffs claim that it will suffer irreparable harm if their bankers, joint venturers, and accountants expose trade secrets of plaintiffs when responding to the SEC subpoenas directed to them. Plaintiffs further allege that the investigation of plaintiffs in their small home town of Shelby, Montana, with the SEC investigators allegedly implying that plaintiffs are guilty of fraud and wrongdoing has greatly harmed their business reputation and their ability to obtain financing. The manner by which the SEC conducts its investigation, too, is not a subpoena enforcement issue, though it may be relevant to agency intent.

The SEC nonetheless contends that the court has no jurisdiction to enjoin an agency investigation or to inquire into agency motivation behind its investigation except in a subpoena enforcement proceeding. The court does not agree.

One court has found district court jurisdiction to enjoin SEC investigations " . . . predicated on allegations to the effect that the SEC 'has plainly exceeded its statutory authority or threatens irrepa-

rable injury in clear violation of an individual's rights.'" *International Waste Controls, Inc. v. S.E.C.,* 362 F.Supp. 117, 120 (S.D.N.Y.1973).

In a case with issues similar to the ones involved herein, the Ninth Circuit Court of Appeals found that the district court had jurisdiction to review the agency actions under 28 U.S.C. § 1331 and 5 U.S.C. § 704 (final agency action for which there is no other adequate remedy). The plaintiff in *Standard Oil Co. of California v. F.T.C.,* 596 F.2d 1381 (9th Cir. 1979), alleged that the FTC had issued an administrative complaint without "reason to believe" that the plaintiff had committed a violation and that the FTC "had improperly considered Congressional pressure and legally irrelevant political and economic factors." *Standard Oil, supra,* 596 F.2d at 1384. A prerequisite to the issuance of the FTC complaint was an FTC determination that it had "reason to believe" that the plaintiff was engaged in monopolistic practices in violation of the law. 15 U.S.C. § 45(b).

The court in *Standard Oil* set forth a three-part test to determine if the FTC's issuance of a complaint was reviewable agency action under the Administrative Procedure Act ("APA")

> first, whether a statute precludes judicial review, 5 U.S.C. § 701(a)(1); second, whether agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(2); and, third, whether there is no adequate judicial remedy other than review under the APA.

*Standard Oil, supra,* 596 F.2d at 1385.

Here, as in *Standard Oil,* no statute precludes review of the contested agency action.

In *Standard Oil,* the plaintiff claimed that the FTC filed its complaint due to political and economic pressures and not because it had the legally required "reason to believe" that the plaintiff had violated the law. Plaintiffs herein allege that the SEC conducted its investigation out of vindictiveness for their setback in *Nesco* rather than because of "[t]he requirements of the particular case alone. . . . " 17 C.F.R. § 200.66.

The review in this case, like the review in *Standard Oil,* cannot extend to an intrusion by the court into the agency function of whether the requirements of this particular case should induce the exercise of SEC investigatory power. The only inquiry this court may make is whether the SEC ignored the 17 C.F.R. § 200.66 mandate by proceeding out of vindictiveness rather than through an objective assessment of the requirements of the case.

■ The third and final factor to examine, to see if the SEC's investigation is reviewable agency action, is whether pursuit of the investigation is "final agency action." Plaintiffs allege, and the SEC does not dispute, that there is no administrative procedure to challenge the SEC investigation. Furthermore, if the SEC in the future should decide not to file a complaint or if plaintiffs should prevail in subsequent litigation plaintiffs' present claims could become moot. *See, Standard Oil, supra,* 596 F.2d at 1387. This court has jurisdiction under the APA to stay the SEC investigation pending an evidentiary hearing as to whether the SEC followed its 17 C.F.R. § 200.66 mandate.

■ A threshold requirement for a stay of administrative action pending judicial review is a showing of irreparable harm if the stay is not granted. *Justus v. Zimny,* 250 F.Supp. 719 (N.D.Cal.1965). Here, as was shown above, plaintiff's business reputation may be substantially harmed if this court does not issue the requested stay.

II. *MERITS*

Having found jurisdiction to stay agency investigations in appropriate cases, the court must now determine the appropriateness of exercising that jurisdiction in this case.

■ The showing which a plaintiff must make to enjoin an agency investigation certainly can be no less demanding than the heavy burden placed on a person who resists compliance with an agency subpoena in a subpoena enforcement proceeding.

Plaintiffs allege that the original decision of the SEC to investigate them was motivated not by a desire to protect investors in the Ayers oil-gas leases, but to use the information in the *Nesco* case as evidence of plaintiffs' proclivity to violate the law. Plaintiffs' claim that the SEC's resumption, in earnest, of the investigation in September, 1979, shortly after failing to get a preliminary injunction against plaintiffs in *Nesco,* was motivated merely by SEC vindictiveness over the *Nesco* result.

The SEC, however, claims that plaintiffs have been the subjects of an on-going, legitimate SEC investigation. Any delay in proceeding with the investigation, the SEC asserts, was caused merely by plaintiffs' continued procrastination and hollow promises to produce requested information.

Plaintiffs have raised sufficient doubt as to SEC investigatory motives to require this court "to hold a *limited* evidentiary hearing to determine whether further inquiry into the Service's (SEC's) purposes by way of discovery is warranted." *United States v. Church of Scientology of California,* 520 F.2d 818, 825 (9th Cir. 1975). Only if, at the end of the hearing, this court retains a substantial question as to the SEC's purpose in investigating plaintiffs, will the court burden the administrative process by granting plaintiffs' motion for discovery.

The court will order that George N. Prince appear to testify in the evidentiary hearing. Mr. Prince is an attorney for the SEC, who has represented the SEC in these proceedings, and who preliminarily investigated plaintiffs. Mr. Prince was later designated an officer in the formal private investigation. The court shall also order that Jack H. Bookey, Lane B. Emory and David M. Abbott, the other three officers of the Commission in the formal investigation of plaintiffs, testify as to the reasons for the SEC's investigation of plaintiffs. These witnesses shall be subject to examination by counsel for the SEC and cross-examination by plaintiffs, and to questioning by the court.

An appropriate order shall issue.