**ROBERT K. BELL ENTERPRISES, INC., an Oklahoma Corporation, Plaintiff,**

v.

**CONSUMER PRODUCT SAFETY COMMISSION et al., Defendants.**

No. 79–C–40–C.

United States District Court, N. D. Oklahoma.

Feb. 15, 1980.

Bradford S. Baker, Farmer & Woolsey, Inc., Tulsa, Okl., for plaintiff.

George Carrasquillo, Asst. U. S. Atty., Tulsa, Okl., John Fleder, Chas. McConachie, Arthur E. Korkosz, Consumer Affairs Section, Antitrust Div., U. S. Dept. of Justice, Allen W. Hausman and Alan H. Schoem, Eric Stone, Consumer Product Safety Commission, Washington, D. C., for defendants.

## ORDER

H. DALE COOK, Chief Judge.

The Court now considers plaintiff's Motion for Summary Judgment and defendants' Motions to Dismiss and for Summary Judgment. Affidavits and other evidence have been presented by both parties, and pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, defendants' Motion to Dismiss for failure to state a claim will be merged into defendants' Motion for Summary Judgment.

This is an action seeking various forms of declaratory and injunctive relief as a result of the attempt of defendant Consumer Product Safety Commission (hereinafter "Commission") to gather certain information about an aerial tramway known as the Sky Ride, manufactured by von Roll, Ltd. of Bern, Switzerland, and owned and operated by plaintiff Robert K. Bell Enterprises, Inc., at its amusement park in Tulsa, Oklahoma.

Plaintiff's argument has basically two propositions: that the defendant Commission lacks jurisdiction over plaintiff's amusement park operations, and that the Consumer Product Safety Act (15 U.S.C. §§ 2051 et seq., hereinafter "the Act") violates the Fourth Amendment's search and seizure concepts in that it permits a search and inspection of plaintiff's records without a search warrant. The Court will first examine the jurisdictional question.

I. *Is The Sky Ride A Consumer Product?*

Plaintiff's contention that the Commission lacks jurisdiction is based on the argument that amusement park rides in general and the von Roll Sky Ride in particular are not consumer products within the meaning of the Act. Plaintiff's particular points in support are that:

1. The legislative intent is contrary to defendants' position in that

   a. the original wording focused on household products, and

   b. the later enlargement to "items not reaching the consumer by sale" was intended to reach free sample distributions, not amusement park rides, and that the "free sample enlargement included the concept that the product must be capable of being purchased by the consumer."

2. Defendants' position is inconsistent with the Congressional debate to exclude mobile homes, and the Sky Ride is more closely analogous to mobile homes than it is to toasters or irons, which are the products that Congress cited as typical of the Act's intended scope.

3. Defendants' language in construing the statute is contrary to the language of the statute.

   a. The "personal use" requirement of the Act precludes coverage of the Sky Ride since the passenger has no control over the ride and is merely a passive participant.

   b. The "industrial product exception", which stated that a product such as an electric drill that would not be covered by the Act if used on the job by a trained worker would be covered for home use, does not encompass the

Sky Ride since the passenger again does not exercise sufficient control of the product to meet the intention of this exception.

4. The defendants' definition of consumer product is not in harmony with the Act as a whole.

a. The "free sample provision", authorizing the Commission to obtain samples at manufacturers' cost for testing indicates that the Sky Ride is not within the Act since free samples of the Sky Ride are impossible. Plaintiff states that the free sample provisions are mandatory.

b. Under defendants' construction, if passengers are consumers, then plaintiff is a retailer; but such a conclusion is inconsistent with the language of the Act.

c. Definitions of consumer product found in other statutes are inconsistent with defendants' position.

5. The Sky Ride at plaintiff's amusement park is used by patrons primarily for transportation. Thus, even the *Chance* case (see infra), which held amusement park rides within the Act, would have precluded coverage of plaintiff's Sky Ride as a transportation device outside the Act.

6. Plaintiff's position is supported by the California federal court decision in *Walt Disney Productions & Walt Disney World Co. v. United States Consumer Product Safety Commission*, Civil No. 79–0170–LEW (Px), (C.D.Calif. April 20, 1979).

■ After reviewing the statutory language and history, the cases, and the arguments of the parties, this Court concludes that plaintiff's Sky Ride is a consumer product within the coverage of the Act and defendants' jurisdiction. The Act defines consumer product as

. . . any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, con-

sumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise; but such term does not include—

(A) any article which is not customarily produced or distributed for sale to, or use or consumption by, or enjoyment of, a consumer . . . . ..

15 U.S.C. § 2052(a)(1). Subparagraphs (B) through (I) following the above, specify excluded items.

Discussing the range of products covered by this definition, a District of Columbia federal court stated:

The most unequivocal expression of congressional intent to be gleaned from the legislative history of the Act is that the definition of "consumer product" be construed broadly to advance the Act's articulated purpose of protecting consumers from hazardous products. The report of the Senate Committee on Commerce, for example, points out that, rather than attempting "to catalogue those items included within the concept of 'consumer product,'" the Act's drafters chose to delineate the concept by excluding particular items from its range. S.Rep. No. 749, 92d Cong., 2d Sess. 12 (1972).

*Consumer Product Safety Commission v. Chance Manufacturing Co.*, 441 F.Supp. 228, 231 (D.D.C.1977). The *Chance* case concerned the Consumer Product Safety Commission's jurisdiction over an amusement park ride known as the "Zipper", consisting of a boom that rotated 360° and twelve cars attached to the boom at equidistant points. Unlike the Sky Ride in the instant case, the Zipper did not move its passengers from one point to another; it was a fixed ride where the passengers boarded and unloaded at the same place. In contrast, plaintiff's Sky Ride covers approximately a one-third mile course over plaintiff's amusement park and the Tulsa State Fair grounds. The *Chance* court found that the Zipper satisfied two requisites for coverage by the Act: one, that it was produced or distributed for the personal use, consumption or enjoyment of a consumer, and two, that it was sold, used, consumed or enjoyed in or around a resi-

dence, a school, in recreation, or otherwise. Noting that the consumer-passenger did not have the right to control the Zipper, and that the consumer's relationship to the Zipper was little more than "an abstract right to occupy an amusement device", the court found that it was the intent of Congress, at least in part, that jurisdiction turn on the extent to which consumers are exposed to the product, rather than their participation in its control or operation. 441 F.Supp. at 232–233. Thus, the personal use limitation turned on use by consumers, not control by consumers. The court also found that "in recreation" was a distinct area of regulation, rather than a modified type of household or school use. *Id.* at 233.

Thus, as to plaintiff's argument that the Act does not apply generally to amusement park rides, this Court is satisfied that plaintiff's first three points (1 through 3, supra) are countered by the *Chance* holding. While the legislative intent does encompass household products, as plaintiff's evidence indicates, it is not limited to them, as *Chance* illustrates. Plaintiff's argument is. that because Congress rejected inclusion of mobile homes within the Act, it would reject coverage of amusement park rides. The Congressional reference (during debate) to "toasters and irons" as typical of consumer products is not typical of the broad range of products covered by the Act, which includes both fireworks and artificial athletic field turf, as well as toasters and irons. Furthermore, amusement park rides fit neatly into the recreation coverage of the Act, while mobile homes do not fit into any current area of the Act's coverage.

Plaintiff's third point, that defendants' position is contrary to the language of the statute, is clearly refuted by the *Chance* court analysis of personal use, of the industrial product exception (*Id.* at 231–232), and of the recreational area of coverage.

Plaintiff's fourth point is that defendants' position is inconsistent with the Congressional view of consumer products as illustrated by the language of this Act and other statutory provisions. First, plaintiff argues, the Act's free sample provision cannot be realized in the regulation of amusement park rides, and they must therefore be outside the Act. However, contrary to plaintiff's assertion that the free sample testing provision is mandatory, the Commission's authority to obtain samples for testing is merely that—authority. The Commission is not required to test products. Furthermore, as defendants note, it would be possible for the Commission to obtain samples of operating parts of the Sky Ride for testing. The Court is thus unpersuaded by this argument.

Plaintiff also argues that if passengers in the Sky Ride are consumers, then plaintiff must be a retailer, which conflicts with the Act's definition of a retailer as "a person to whom a consumer product is delivered or sold for purposes of sale or distribution by such a person to a consumer". Title 15 U.S.C. § 2052(a)(6). In this Court's view, plaintiff Bell fits very well into this definition. The Sky Ride was delivered and sold to plaintiff for purposes of distribution to a consumer. The fact that consumers do not take the Sky Ride home, or take any possession of it, does not negate the fact that its function was distributed to them, much in the same way that the function of artificial athletic field turf is distributed to consumers of that product.

Finally, plaintiff asserts that the definition of consumer product in other legislation defeats defendants' position. Plaintiff cites the Magnuson-Moss Warranty Act of 1975, 15 U.S.C. §§ 2301 et seq., in which consumer product is defined as "any tangible personal property which is distributed in commerce and which is normally used for *personal, family, or household purposes* . . ." 15 U.S.C. § 2301(1), quoted in Plaintiff's Brief in Response, filed April 5, 1979, p. 28 (emphasis plaintiff's). Turning first to the phrase emphasized by plaintiff, the Court would note that amusement park recreation would certainly appear to be a personal or family purpose. And while the remainder of the definition does seem inconsistent with defendants' position, the Court finds the limited scope of a statute dealing with warranties hardly convincing as a limitation on a statute concerned with safety, addressing products used by consumers as well as bought by them, and products retained by the purchaser and

used by other consumers, such as artificial turf.

Plaintiff next argues that, even if the *Chance* decision is correct, amusement park rides are covered by the Act and the very wording of *Chance* excludes plaintiff's Sky Ride. Plaintiff quotes the following passage from *Chance*:

Similarly, any effort by the Commission to regulate such other forms of conveyance as elevators, escalators, subways, and trains, could find no support in the holding above; even if an individual's use of such conveyances constituted "personal use, consumption or enjoyment," a question on which we express no opinion, the contextual clause of the definition would require that the use of the product be "in or around . . . a household or residence; a school, in recreation, or otherwise." While the word "otherwise" might be applied to cover virtually any use of a product, such an obliteration of jurisdictional limits derives no discernible support from the legislative history. In contrast to a ride on a subway or elevator, which almost always is taken for the ulterior purpose of reaching a destination, a ride on the Zipper machine is an end in itself. Because one rides the Zipper machine for its own sake and for the pleasure and thrill resulting therefrom, and not for any other purpose, it is used "in recreation." (*Id.*)

Plaintiff's Brief in Support, filed April 5, 1979, p. 29. Plaintiff then asserts that the Sky Ride is used almost solely during the Tulsa State Fair at which time visitors use the Sky Ride for transportation purposes from plaintiff's premises to the fairgrounds, and that since the ride is used as a conveyance rather than an amusement, it is analogous to an elevator or subway, which were excluded in the dicta of *Chance*. In their response, defendants dispute that the Sky Ride is a conveyance, noting the manufacturer's promotion for the ride as "excitement . . . anywhere . . . anyplace . . . amusement parks . . zoo, fairs, exhibitions, or other tourist attractions . . . Skyrides provide a unique method of moving people, while at the same time giving them a new exciting experience . . . a Skyride can be major attraction in itself." Defendants' Brief, filed April 23, 1979, p. 18. Defendants also assert that plaintiff's supporting affidavit from Robert K. Bell is self-serving and dubious in that it claims that a $1 million device would be used only during the state fair, and only for transportation over a one-third mile course.

From the evidence offered on this issue, the Court must concur with defendants. As to whether the Sky Ride is used for transportation or amusement, plaintiff's only evidence is its assertion in Robert K. Bell's affidavit that he estimates that one-third of the fair's visitors use the Sky Ride for transportation. Bell does not state whether the other two-thirds use the Sky Ride, and if so, what they use it for. More importantly, Bell does not state how he arrived at his estimate that any of the riders used the Sky Ride for transportation across the fairgrounds. Bell states that plaintiff is doing business as Bell's Amusement Park, that it operates amusement park rides, and that the von Roll Sky Ride is one of those rides. This infers support for defendants' contention that the Sky Ride is offered as an amusement, and with only Bell's undocumented "estimate" that one-third of the fairgoers use the device for transportation, the Court finds that the Sky Ride is primarily an amusement attraction in an amusement park full of similar attractions.

Plaintiff also directs the Court's attention to *Disney, supra,* a case holding that an identical von Roll tramway in California was not within the Commission's jurisdiction. In so ruling, the *Disney* court went against the *Chance* decision. The *Disney* decision rested on the following legal conclusions: (1) that Congress intended the Act to be limited to products "capable of production or distribution for sale to an individual"; (2) that the "free sample provision" of the Act inferred a coverage of products for which it was "practicable to obtain a sample . . ."; (3) that coverage was limited to products that might be owned and/or operated by consumers; and (4) that the "ride apparatus as a whole is not produced 'for the personal use, consumption or enjoyment of a consumer.'"

Subsequent to the *Disney* decision, a Texas federal court considered the same issue on the same device and reached an opposite result. See *The State Fair of Texas v. U. S. Consumer Products Safety Commission,* 481 F.Supp. 1070 (N.D.Tex., Dallas Div. 1979). Considering the *Disney* court's statement on the free sample provision, the *State Fair* court noted that if the ability to be sampled were required of a consumer product within the Act, there would have been no need to expressly exempt aircraft from the Act's coverage. *State Fair,* supra, at 1078. The court also noted that components of the Sky Ride were conceivably available for sample and testing.

As for the other holdings in *Disney,* this Court notes their inconsistency with *Chance,* and observes the minimal consideration of legislative history in *Disney* compared to that in *Chance.* Accordingly, this Court will follow the apparently more thoroughly researched and better-reasoned decision in *Chance,* supported by the decision in *State Fair.*

## II. *The Constitutionality of the Act*

Plaintiff additionally argues that the Act's authorization for searches, inspections, and seizures (including constructive searches), investigations, and access to records, violates the Fourth Amendment of the Constitution in that the Act does not require the Commission to obtain a warrant, and does not require any prior showing of probable cause. Plaintiff also argues that the Act's authorization for criminal and civil penalties, also without requiring the Commission to obtain a warrant, are further violations of the Fourth Amendment.

Plaintiff's arguments here are also unpersuasive. Defendant Commission cites its authority for the information sought from plaintiff in this case as 15 U.S.C. § 2076, which provides in pertinent part:

(a) The Commission may, by one or more of its members or by such agents or agency as it may designate, conduct any hearing or other inquiry necessary or appropriate to its functions anywhere in the United States. A Commissioner who participates in such a hearing or other inquiry shall not be disqualified solely by reason of such participation from subsequently participating in a decision of the Commission in the same matter. The Commission shall publish notice of any proposed hearing in the Federal Register and shall afford a reasonable opportunity for interested persons to present relevant testimony and data.

(b) The Commission shall also have the power—

(1) to require, by special or general orders, any person to submit in writing such reports and answers to questions as the Commission may prescribe; and such submission shall be made within such reasonable period and under oath or otherwise as the Commission may determine;

\*　　\*　　\*　　\*　　\*　　\*

(3) to require by subpena the attendance and testimony of witnesses and the production of all documentary evidence relating to the execution of its duties;

(4) in any proceeding or investigation to order testimony to be taken by deposition before any person who is designated by the Commission and has the power to administer oaths and, in such instances, to compel testimony and the production of evidence in the same manner as authorized under paragraph (3) of this subsection;

The Tenth Circuit, discussing the power and limits of administrative investigation, has stated:

The law governing the limits on the administrative power of investigation has evolved from the earlier judicial condemnation of fishing expeditions to that of enforcement of the subpoena power "if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950). All that is now required is that the investigation be for a lawfully authorized purpose. *United States v. Morton Salt Co., supra.* In

*United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the United States Supreme Court held that an investigation by the Internal Revenue Service into a question of fraudulent falsification of tax returns need not be based upon something in the nature of probable cause. The Court there said:

> "We . . . hold that the Government need make no showing of probable cause to suspect fraud unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process, predicated on more than the fact of re-examination and the running of the statute of limitations on ordinary tax liability." 379 U.S. at 51, 85 S.Ct. at 251.

*Equal Employment Opportunity Commission v. University of New Mexico,* 504 F.2d 1296, 1302–03 (10th Cir. 1974).

Plaintiff endeavors to show that the Supreme Court guidelines in this area have changed, citing *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), where the Supreme Court held that inspections of commercial premises by the Occupational Safety and Health Administration (OSHA) without a warrant violated the Fourth Amendment, and that a warrant would henceforth be required. However, contrary to plaintiff's inference from *Marshall v. Barlow's,* the Supreme Court also held that its requiring a warrant for OSHA inspections did not mean that warrantless search provisions in other regulatory statutes are unconstitutional. The Court stated that:

> [t]he reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute. . . . In short, we base today's opinion on the facts and law concerned with OSHA and do not retreat from a holding appropriate to that statute because of its real or imagined effect on other, different administrative schemes.

436 U.S. at 321–22, 98 S.Ct. at 1825.

■ Applying the above cases to the instant facts, this Court discerns no abusive process, mentioned in *Powell,* in the Commission's collection of information of plaintiff's repair and maintenance records on the von Roll Sky Ride; nor is any unconstitutional encroachment on plaintiff's privacy apparent in this case. The Commission's efforts are a valid exercise of its authority pursuant to a legitimate purpose.

■ As to plaintiff's complaint concerning the Act's authorization of criminal and civil sanctions, the Court notes that plaintiff has not been faced with the imposition of those penalties, therein failing the injury-in-fact requirement of *Association of Data Processing v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); plaintiff thus lacks standing to assert this argument.

III. *The Quashing of the Commission's Inspection Warrant in State Fair v. U. S.*

Finally, this Court would note certain holdings in *State Fair, supra,* that weren't at issue in this action. While that case held that the Texas State Fair's von Roll tramway (identical to Bell's Sky Ride) was a consumer product within the Act, it also sustained State Fair's motion to quash the Commission's inspection warrant on the grounds that State Fair was not within the scope of the Commission's inspection powers. The facts were that an accident had occurred involving the ride, and the Commission sought an on-site inspection; its authority was 15 U.S.C. § 2065. The court held that the Commission had made no showing that State Fair had "manufactured" the ride within the meaning of § 2065 (including the concept of assembling the ride, which the court stated had also not been done by State Fair); that no showing had been made that State Fair was responsible for the ride's distribution into commerce; and that no showing had been made that State Fair was a factory, warehouse, or establishment where an inspection was authorized. Without the above being established, the court concluded, no inspection was authorized.

In the instant case, the Commission seeks only the production of information pursuant to 15 U.S.C. § 2076, which authorizes the Commission "to require, by special or general orders, *any person* to submit in writing such reports and answers to questions as the Commission may prescribe" and "to require by subpena the attendance and testimony of witnesses and the production of all documentary evidence relating to the execution of its duties" (emphasis added). The limitations on which the *State Fair* decision turned are not present here. The Commission is authorized to seek this information from "any person", and Bell's status as a manufacturer or assembler, or as a factory, warehouse, or establishment for inspection purposes is irrelevant here. Making no pronouncement on the merit of the *State Fair* decision on the Commission's on-site inspection authority, this Court finds that the *State Fair* holding on that point has no bearing on this case.

For the foregoing reasons, plaintiff's motion for summary judgment is overruled on all points, and defendants' motion for summary judgment is sustained on all points.