In the Matter of The Tax Liability of Willis H. NEWTON, Lee M. Newton and Trio Manufacturing Company, Intervenors-Appellants,

UNITED STATES of America, and Douglas P. McCallum, special agent, Internal Revenue Service, Plaintiffs-Appellees,

v.

George B. PENNINGTON, CPA, Defendant.

UNITED STATES of America and Douglas P. McCallum, Special Agent, IRS, Plaintiffs-Appellants,

v.

George B. PENNINGTON, CPA, Defendant-Appellee.

Nos. 82–8586, 83–8056.

United States Court of Appeals, Eleventh Circuit.

Nov. 3, 1983.

Ralph H. Greil, Atlanta, Ga., for Pennington.

Jere W. Morehead, Asst. U.S. Atty., Atlanta, Ga., Glen L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Carleton D. Powell, William A. Whitledge, Tax Div., Dept. of Justice, Washington, D.C., for U.S. and Mc Callum.

Robert H. Hishon, Atlanta, Ga., John D. Comer, Macon, Ga., for Newton, et al.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD,* District Judge.

JOHNSON, Circuit Judge:

■ These consolidated appeals present the question whether tax accrual workpapers prepared by an independent auditor of a closely held corporation may be subject to summons by the Internal Revenue Service ("IRS") without a special showing of particularized need for the material sought. We hold that tax accrual workpapers are subject to IRS summons without any special showing and, accordingly, we affirm the order enforcing the summons in this case. We also affirm the denial of the government's motion to hold respondent Pennington in contempt for his refusal to comply with that part of the district court order that this Court stayed pending appeal.

The facts of this case are undisputed. The IRS commenced an audit of the 1977–79 federal income tax returns of the closely held Trio Manufacturing Company ("Trio" or "Taxpayer") and of Willis H. Newton, a major shareholder of the family-owned company, and his wife. During the course of its investigation, the IRS, acting under the authority of 26 U.S.C.A. § 7602,[1] issued

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Section 7602 provides in relevant part:
   § 7602. Examination of books and witnesses
   (a) Authority to summon, etc.—For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
     (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
     (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
     (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
   26 U.S.C.A. § 7602.

two summonses to George B. Pennington, the certified public accountant retained by the Newtons to prepare their personal income tax returns and the corporate income tax returns of Trio, and to conduct audits of Trio for the years 1977, 1978 and 1979.[2] The summons here in dispute sought information regarding Trio's tax liability, including any and all workpapers, analyses and computations prepared in the course of Pennington's annual audits of Trio.

In accordance with Taxpayer's directions, Pennington refused to comply with the summons, and the IRS petitioned the district court for an order enforcing its summons.[3] Pennington informed the court that he would comply with any order that it might enter and that his refusal to produce the summoned documents was only in deference to Taxpayer's directions. Taxpayer successfully moved to intervene in the enforcement action.[4]

The district court referred the case to a magistrate. After an evidentiary hearing and briefing by the parties, the magistrate recommended that the summons be enforced in its entirety. The district court adopted the magistrate's report and recommendation.

Taxpayer appealed, and this Court, after initially denying Taxpayer's motion for a stay of the enforcement order, granted a partial stay of the order with respect to the tax accrual workpapers sought by the IRS. Pennington then produced all of the summoned materials except those that Taxpayer asserted fell within this Court's stay, which after negotiations included some twenty-one pages of documents.

The government, disputing that tax accrual workpapers are beyond the scope of IRS summons authority and disputing that the documents withheld even constitute tax accrual workpapers, filed a motion in district court seeking to have Pennington held in contempt. The district court, considering this Court's partial stay, conducted an in camera review of the disputed documents, determined that they were tax accrual workpapers and denied the government's contempt motion.

2. The preparation of audited financial statements by a certified public accountant was required by banks from whom Trio obtained credit.

3. The IRS enforcement action was premised on § 7604(b) of the Internal Revenue Code.

> (b) Enforcement.—Whenever any person summoned under section 6420(e)(2), 6421(f)(2), 6427(h)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

26 U.S.C.A. § 7604(b).
The jurisdiction of the district court was premised on §§ 7402(b) and 7604(a) of the Code.

> § 7402. (b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

26 U.S.C.A. § 7402(b).

> § 7604. Enforcement of summons
> (a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

26 U.S.C.A. § 7604(a).

4. Section 7609(b) of the Internal Revenue Code permits intervention in a third-party summons proceeding by the real party in interest. 26 U.S.C.A. § 7609(b).

Trio appeals the district court's order enforcing the IRS summons as to tax accrual workpapers. The government appeals the district court's denial of its contempt motion. We will consider these consolidated appeals in turn.

## I. TAXPAYER'S APPEAL.

Trio argues that this Circuit should follow the decision of the Second Circuit in *United States v. Arthur Young & Company*, 677 F.2d 211 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983), and hold that an accountant work product privilege protects tax accrual workpapers from IRS summons power absent a showing of particularized need and inability to obtain the substantial equivalent from other sources. Trio further argues that no such showing has been made here.

Trio also argues that the district court erred as a matter of law in concluding that Pennington's tax accrual workpapers are relevant to the amount of Taxpayer's federal income tax liability. Trio argues that tax accrual workpapers are not relevant per se to an IRS investigation of Taxpayer's correct tax liability. Trio further argues that the relevancy of the documents to the IRS investigation cannot be determined simply from the description of the documents in the IRS summons, but that the Service must make a further showing of relevancy after the Taxpayer presents some contrary evidence. Trio contends that the IRS failed to make this showing.

■ Preliminarily, we must address the government's contention that the question whether tax accrual workpapers are protected from IRS summons power is not properly before this Court because it was not adequately raised below. This contention is without merit. As we have recently noted, "[t]he law is clear that, absent special circumstances, defenses not presented and for which proof is not offered in the trial court cannot be raised for the first time on appeal." *Johnson v. Smith,* 696 F.2d 1334, 1338 (11th Cir.1983). The record in this case clearly indicates that Trio raised the tax accrual issue in the district court, even if it did not concentrate on that issue in its defense. Moreover, it appears that the reason Taxpayer did not emphasize the issue is that the government never specified that it was seeking "tax accrual" documents.

■ The broad language of the summons sought any and all workpapers, analyses and computations prepared in the course of Pennington's audits of Trio. Taxpayer sought to clarify the scope of the summons through subpoenas of IRS agents and documents and supported its position with the argument that the government must make a showing of particularized need for workpapers and analyses prepared during a financial audit. The government successfully moved to quash Taxpayer's subpoenas. At the evidentiary hearing, Taxpayer attempted to discover whether the Service sought tax accrual workpapers by directly asking the agent who drafted the summons. The agent responded that he was unfamiliar with such documents. Finally, in the Taxpayer's proposed findings of fact and conclusions of law submitted to the magistrate and in its objections to the magistrate's report, Taxpayer cited *Arthur Young* and argued that tax accrual workpapers could not be subject to IRS summons merely on a showing of their relevancy to a tax investigation. In view of these facts, we hold that Taxpayer adequately presented this defense to the trial court, and this Court may consider the issue on appeal.

### A. Whether tax accrual workpapers are relevant.

■ The Internal Revenue Service has broad authority under Section 7602. The Service may examine "any books, papers, records or other data which may be relevant or material" to its investigation of the correctness of any tax return. 26 U.S.C.A. § 7602(a). The Supreme Court in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), defined the minimal showing that the IRS must make when seeking an order to enforce its summons.

*Id.* at 57–58, 85 S.Ct. at 255. It must show that

> the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to that purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed. . . .

*Id.*

■ The Service can satisfy its burden merely by presenting the sworn affidavit of the agent who issued the summons. *United States v. Southeast First National Bank of Miami Springs,* 655 F.2d 661, 664 (5th Cir. 1981).[5] Once the government makes this minimal showing, the burden shifts to the taxpayer to disprove one of the elements of the government's case or to show that enforcement of the summons would be an abuse of the court's process. *Id.; United States v. Davis,* 636 F.2d 1028, 1034 (5th Cir.1981).

Taxpayer here argues that the Service carries the ultimate burden in a summons enforcement proceeding. If the taxpayer presents some evidence that the government has not satisfied the *Powell* requirements or that enforcement otherwise would be an abuse of process, then the government must come forward with ultimately persuasive evidence. Trio argues that, after it presented evidence challenging the relevancy of the tax accrual workpapers to the IRS tax investigation, the government was required to persuade the court that the workpapers were relevant to its investigation.

Because we determine that the IRS here made the minimal showing as required by *Powell* and that tax accrual workpapers are relevant as a matter of law to a legitimate investigation of a corporation's correct tax liability, we find it unnecessary to discuss further the burdens of proof required in a summons enforcement proceeding.

Due to the complexity of the federal tax structure, the return filed by a corporate taxpayer often is not the final statement of the amount of taxes owed. Taxpayers often are required to pay more in taxes than their returns indicated. Many corporations, therefore, set aside a reserve on their balance sheets to cover this potential additional liability. Corporate financial statements that do not include a reserve for contingent tax liability may give an inaccurate picture of the firm's financial position. Consequently, as Trio itself noted, generally accepted auditing principles require auditors to assess a corporation's contingent tax liability and determine whether it is great enough to require the corporation to reveal the potential liability on its balance sheet. In addition, federal securities laws require regulated corporations to file with the Securities and Exchange Commission financial statements that have been audited by independent accountants in accordance with generally accepted auditing principles.[6] The documents generated by that tax accrual analysis disclose the weak spots in the corporation's assessment of its own tax liability.

■ In *United States v. Wyatt,* 637 F.2d 293 (5th Cir.1981), the former Fifth Circuit, in a decision that is binding on this Court, articulated the test for relevancy under *Powell.* The test is "whether the summons seeks information which 'might throw light upon the correctness of the taxpayer's return'" and, more narrowly, whether there is "an indication of a 'realistic expectation rather than an idle hope that something might be discovered.'" *Id.* at 300–01 (citations omitted).

The Fifth Circuit, applying this test in a nonbinding decision, recently held that tax accrual workpapers are relevant to a determination of a corporation's tax liability.

---

5. The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent, which is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

6. 15 U.S.C.A. § 78*l;* 17 C.F.R. § 210.1—02(d).

*United States v. El Paso Company,* 682 F.2d 530, 537 (5th Cir.1982). The court there rejected the suggestion that tax accrual workpapers are not relevant because they are neither tools used to prepare tax returns nor source documents representative of actual transactions. *Id.* The court thus squarely rejected the reasoning of *United States v. Coopers & Lybrand,* 550 F.2d 615 (10th Cir.1977), which denied the relevancy of tax accrual workpapers to an IRS investigation. *Id.* at 621.

Applying the *Wyatt* definition, we agree that tax accrual workpapers are relevant. The workpapers highlight and assess questionable tax interpretations that the taxpayer has given to its transactions. As the *Arthur Young* court itself noted in holding tax accrual workpapers relevant to a legitimate IRS investigation, "[d]ifferent tax positions lead to different amounts of liability. It is difficult to say that the assessment by the independent auditor of the correctness of the positions taken by the taxpayer in his return would not throw 'light upon' the correctness of the return." 677 F.2d 211, 219 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983).[7] Moreover, the controlling precedent of this Circuit does not require that information relevant to a tax investigation be limited to source documents or materials used in preparing returns. *See, e.g., United States v. Wyatt,* 637 F.2d 293 (5th Cir.1981) (summons sought corporate officials' answers to specific questions regarding their knowledge of bribes, kickbacks and other illegal transactions); *United States v. Newman,* 441 F.2d 165 (5th Cir.1971) (summons sought records of taxpayer's business associates). We thus join the Second and Fifth Circuits in rejecting the Tenth Circuit's holding in *Coopers & Lybrand.*

**B.** *Whether tax accrual workpapers are privileged.*

Taxpayer argues that, even if relevant, tax accrual workpapers should not be sub-

ject to IRS summons authority absent a showing of particularized need. Taxpayer asks this Court to adopt and extend the reasoning of the Second Circuit in *United States v. Arthur Young Company,* 677 F.2d 211 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983), which held that tax accrual workpapers prepared by independent auditors of a public corporation subject to the federal securities laws are protected from IRS summons authority by a work product privilege similar to the attorney work product privilege recognized by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and embodied in Rule 26 of the Federal Rules of Civil Procedure.

The decision of the Second Circuit in *Arthur Young* is based on a perceived conflict between the federal tax and securities laws. The court observed that a decision to permit the IRS routinely to summon documents that contain an auditor's assessment of the questionable tax position taken by its client would undermine the integrity of the auditing process and defeat the purpose of the securities laws mandating independent financial audits and public filing of financial statements. 677 F.2d at 219–20. The court assumed that corporate officials would be less forthcoming with an independent auditor once they knew that the auditor's assessment of the corporation's contingent tax liability would be readily accessible to Internal Revenue agents. *Id.* at 220. Faced with this "clash between two important congressional policies," *id.,* and cognizant of the Supreme Court's recognition that " 'contrary legislative purposes' can undercut the 'broad latitude' otherwise provided to the IRS," *id.* at 219 (quoting *United States v. Euge,* 444 U.S. 707, 716 & n. 9, 100 S.Ct. 874, 880 & n. 9, 63 L.Ed.2d 141 (1980)), the Second Circuit carved out of the IRS summons authority a new accountant work product privilege. The court stated that the new privilege, similar to the attor-

---

7. The Second Circuit, while holding that tax accrual workpapers are relevant to a legitimate IRS investigation, also held that they are protected from IRS summons by an accountant work product privilege that can be overcome only upon a showing of particularized need. 677 F.2d at 220–21.

ney work product privilege, allows "the IRS to procure [tax accrual workpapers] when the rare situation arises when it can make a sufficient showing of need to adequately justify invading the integrity of the auditing process." *Id.* at 221.

Trio argues that this Court should adopt the reasoning of *Arthur Young* and extend it to a case that does not present the same conflict between congressional purposes— because it involves a closely held corporation that is not subject to the federal securities laws—but that does implicate similar policy concerns. We decline this invitation to follow the Second Circuit and embrace instead the position taken by Judge Newman in dissent. We also note the Fifth Circuit's recent decision in *United States v. El Paso Company,* 682 F.2d 530 (5th Cir. 1982), which supports our decision in this case.

■ The broad summons authority that Congress gave to the Internal Revenue Service under Section 7602 is subject to the "'traditional privileges and limitations.'" *Upjohn Company v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981). The Supreme Court has held, for example, that the attorney-client privilege and the attorney work product doctrine limit the scope of the IRS summons power. *Id.* at 386, 101 S.Ct. at 681. Federal law, however, does not recognize an accountant-client privilege, *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973); *International Horizons, Inc. v. Committee of Unsecured Creditors,* 689 F.2d 996, 1003–04 (11th Cir.1982), or, at least before *Arthur Young* itself, an accountant work product privilege, *United States v. Arthur Young Company,* 677 F.2d at 222 (Newman, J., dissenting).[8]

■ Congress' explicit grant of summons power to the IRS should not be limited by a newly recognized privilege unless Congress itself chooses to so limit IRS authority. The Supreme Court in its review of IRS summons power has made clear that "absent unambiguous directions from Congress," the courts should not impose additional restrictions on the scope of Section 7602. *United States v. Bisceglia,* 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975).

Trio is not subject to the same federal securities laws that were deemed critical to the decision in *Arthur Young,* but it argues that the same policy there embraced—protection of accountant work product to ensure the integrity of the auditing process and the protection of investor confidence— should be adopted here. In view of our determination that Congress is the proper body to make any decision to limit IRS summons power with newly recognized privileges, and especially in the absence of any conflicting congressional purposes, we refuse to adopt the position urged upon us by the Taxpayer.

## II. GOVERNMENT'S APPEAL.

The government appeals the district court's denial of its motion to hold Pennington in contempt for his failure to produce twenty-one documents within the scope of the court's summons enforcement order. The government notes that use of the contempt motion was procedurally necessary to bring before this Court the tax accrual workpapers issue, but concedes that imposition of sanctions to obtain those records may be unnecessary. We agree.

This Court granted a stay of the district court's summons enforcement order with

---

8. Despite extensive and recent precedent explicitly rejecting the existence of an accountant-client privilege under federal common law, the Second Circuit's decision essentially creates just such a privilege. Although the court labels its creation an accountant work product privilege, the policy rationale it relied upon to support its new doctrine—encouraging corporate officials to reveal openly to their independent accountants the corporation's tax vulnera-

bilities—argues for an accountant-client communications privilege to be exercised by the client rather than an accountant work product doctrine to protect the accountant's independent assessment of the amount of tax that the corporation owes to the federal fisc. *See United States v. El Paso Company,* 682 F.2d 530, 541 n. 13 (5th Cir.1982); *Arthur Young,* 677 F.2d at 223, n. 5 (Newman, J., dissenting).

respect to tax accrual workpapers within the doctrine of *Arthur Young*. In granting the partial stay, we noted that, if the parties could not agree on what was required to be produced under the IRS summons, their dispute could be adjudicated by the district court in a contempt proceeding. Throughout the entire course of this litigation, respondent Pennington has repeatedly made clear his willingness to comply with any court order, including any order issuing from the contempt proceeding.

■ The standard of review on appeal from a grant or denial of a civil contempt motion is whether the district court abused its discretion. *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 626 F.2d 1029, 1031 (D.C.Cir.1980); *cf. United States v. Brummitt*, 665 F.2d 521, 526 (5th Cir.1981), *cert. denied,* 456 U.S. 977, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982) (criminal contempt). The standard requires the petitioner in a civil contempt case to prove by clear and convincing evidence that the respondent violated the court's prior order. 626 F.2d at 1031; *see Northside Realty Associates, Inc. v. United States,* 605 F.2d 1348, 1352 (5th Cir.1979).

The government argued before the district court, and it repeats its argument here, that no tax accrual workpapers within the doctrine of *Arthur Young* exist in this case because Trio is a closely held corporation and because its balance sheet does not contain a reserve for contingent tax liability. In its November 19, 1982, memorandum decision denying the contempt motion, the district court noted that *Arthur Young* may not apply to this case, but on the basis of this Court's partial stay correctly decided to assume applicability of the doctrine until this Court could decide the question.

The government also argued that the district court did not have a sufficient factual basis for determining that the documents withheld from the IRS were tax accrual workpapers. The government first points out that Pennington himself did not testify that the documents withheld were tax accrual workpapers or even that his audit of Trio included an analysis of its contingent tax liability. The government then simply argues that in camera inspection of the documents cannot reveal whether they reflect such analysis.

Pennington's failure to testify is not probative on the question whether the documents withheld were tax accrual workpapers because Pennington throughout the course of these proceedings has sought to maintain his neutrality. Furthermore, the court had before it evidence that Pennington's financial audit reports were prepared in accordance with generally accepted auditing principles, which require the auditor to review with management the question whether any contingent liabilities exist. Finally, under the circumstances of this case, in camera inspection of the disputed documents seems to be the only feasible means of determining whether the documents are tax accrual workpapers without revealing to the IRS the contents of the materials sought to be protected.

■ In view of this Court's partial stay of the summons enforcement order, the district court did not abuse its discretion in denying the government's contempt motion.

Accordingly, we AFFIRM the order enforcing the IRS summons, and we AFFIRM the denial of the government's contempt motion.

