## UNITED STATES ET AL. *v.* POWELL ET AL.

No. 54.   Argued October 14–15, 1964.—Decided November 23, 1964.

*Bruce J. Terris* argued the cause for the United States et al.   With him on the briefs were *Solicitor General Cox,*

*Assistant Attorney General Oberdorfer, Joseph M. Howard, Meyer Rothwacks* and *Norman Sepenuk.*

*Bernard G. Segal* argued the cause for respondents. With him on the brief was *Samuel D. Slade.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

In March 1963, the Internal Revenue Service, pursuant to powers afforded the Commissioner by § 7602 (2) of the Internal Revenue Code of 1954, summoned respondent Powell to appear before Special Agent Tiberino to give testimony and produce records relating to the 1958 and 1959 returns of the William Penn Laundry (the taxpayer), of which Powell was president. Powell appeared before the agent but refused to produce the records. Because the taxpayer's returns had been once previously examined, and because the three-year statute of limitations barred assessment of additional deficiencies for those years [1] except in cases of fraud (the asserted basis for this summons),[2] Powell contended that before he could be forced to produce the records the Service had to indicate some grounds for its belief that a fraud had been committed. The agent declined to give any such indication and the meeting terminated.

Thereafter the Service petitioned the District Court for the Eastern District of Pennsylvania for enforcement of the administrative summons. With this petition the agent filed an affidavit stating that he had been investigating the taxpayer's returns for 1958 and 1959; that based on this investigation the Regional Commissioner

---

[1] I. R. C., § 6501 (a).

[2] I. R. C., § 6501 (c)(1), which in relevant part provides: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

of the Service had determined an additional examination of the taxpayer's records for those years to be necessary and had sent Powell a letter to that effect; and that the agent had reason to suspect that the taxpayer had fraudulently falsified its 1958 and 1959 returns by overstating expenses. At the court hearing Powell again stated his objections to producing the records and asked the Service to show some basis for its suspicion of fraud. The Service chose to stand on the petition and the agent's affidavit, and, after argument, the District Court ruled that the agent be given one hour in which to re-examine the records.[3]

The Court of Appeals reversed, 325 F. 2d 914. It reasoned that since the returns in question could only be reopened for fraud, re-examination of the taxpayer's records must be barred by the prohibition of § 7605 (b) of the Code[4] against "unnecessary examination" unless the Service possessed information "which might cause a reasonable man to suspect that there has been fraud in the return for the otherwise closed year";[5] and whether this standard has been met is to be decided "on the basis of the showing made in the normal course of an adversary proceeding . . . ."[6] The court concluded that the affidavit in itself was not sufficient to satisfy its test of probable cause.[7] Consequently, enforcement of the summons was withheld.

Because of the differing views in the circuits on the standards the Internal Revenue Service must meet to

---

[3] The parties subsequently agreed that if the Government was upheld in its claim of right to examine without showing probable cause, the one-hour time limitation would be removed.

[4] See page 52, *infra.*

[5] 325 F. 2d 914, 915–916.

[6] *Id.,* at 916.

[7] "Probable cause" as used in this opinion is meant to include the full range of formulations offered by lower courts.

obtain judicial enforcement of its orders,[8] we granted certiorari, 377 U. S. 929.

We reverse, and hold that the Government need make no showing of probable cause to suspect fraud unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process, predicated on more than the fact of re-examination and the running of the statute of limitations on ordinary tax liability.

## I.

This enforcement proceeding was brought by the Government pursuant to § 7604 (b) of the Code.[9] In *Reisman* v. *Caplin,* 375 U. S. 440, decided last Term subsequent to the rendering of the decision below, this Court

---

[8] Compare *Foster* v. *United States,* 265 F. 2d 183 (C. A. 2d Cir. 1959); *United States* v. *Ryan,* 320 F. 2d 500 (C. A. 6th Cir. 1963), affirmed today, *post,* p. 61, with *O'Connor* v. *O'Connell,* 253 F. 2d 365 (C. A. 1st Cir. 1958), followed in *Lash* v. *Nighosian,* 273 F. 2d 185 (C. A. 1st Cir. 1959); *Globe Construction Co.* v. *Humphrey,* 229 F. 2d 148 (C. A. 5th Cir. 1956); *De Masters* v. *Arend,* 313 F. 2d 79 (C. A. 9th Cir. 1963).

[9] Section 7604 (b) provides:

"Whenever any person summoned under section 6420 (e)'(2), 6421 (f)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

stated that § 7604 (b) "was intended only to cover persons who were summoned and wholly made default or contumaciously refused to comply." 375 U. S., at 448. There was no contumacious refusal in this case. Thus the Government's conceded error in bringing its enforcement proceeding under § 7604 (b) instead of § 7402 (b) or § 7604 (a),[10] each of which grants courts the general power to enforce the Commissioner's summonses "by appropriate process," raises a threshold question whether we must dismiss this case and force the Government to recommence enforcement proceedings under the appropriate sections. Since the Government did not apply for the prehearing sanctions of attachment and arrest peculiar to § 7604 (b), and since these constitute the major substantive differences between the sections, we think it would be holding too strictly to the forms of pleading to require the suit to be recommenced, and therefore treat the enforcement proceeding as having been brought under §§ 7402 (b) and 7604 (a).

## II.

Respondent primarily relies on § 7605 (b) to show that the Government must establish probable cause for suspecting fraud, and that the existence of probable cause is subject to challenge by the taxpayer at the hearing.[11] That section provides:

"No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspec-

---

[10] The two sections are virtually identical. Section 7402 (b) provides:

"If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

[11] See n. 18, *infra*.

tion of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

We do not equate necessity as contemplated by this provision with probable cause or any like notion. If a taxpayer has filed fraudulent returns, a tax liability exists without regard to any period of limitations. Section 7602 authorizes the Commissioner to investigate any such liability.[12] If, in order to determine the existence or nonexistence of fraud in the taxpayer's returns, information in the taxpayer's records is needed which is not already in the Commissioner's possession, we think the examination is not "unnecessary" within the meaning of § 7605 (b). Although a more stringent interpretation is possible, one which would require some showing of cause for suspecting fraud, we reject such an interpretation

---

[12] Section 7602 provides:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted, forcing him to litigate and prosecute appeals on the very subject which he desires to investigate, and because the legislative history of § 7605 (b) indicates that no severe restriction was intended.

Section 7605 (b) first appeared as § 1309 of the Revenue Act of 1921, 42 Stat. 310. Its purpose and operation were explained by the manager of the bill, Senator Penrose, on the Senate floor:

"Mr. PENROSE. Mr. President, the provision is entirely in the interest of the taxpayer and for his relief from unnecessary annoyance. Since these income taxes and direct taxes have been in force very general complaint has been made, especially in the large centers of wealth and accumulation of money, at the repeated visits of tax examiners, who perhaps are overzealous or do not use the best of judgment in the exercise of their functions. I know that from many of the cities of the country very bitter complaints have reached me and have reached the department of unnecessary visits and inquisitions after a thorough examination is supposed to have been had. This section is purely in the interest of quieting all this trouble and in the interest of the peace of mind of the honest taxpayer.

"Mr. WALSH. . . . So that up to the present time an inspector could visit the office of an individual or corporation and inspect the books as many times as he chose?

"Mr. PENROSE. And he often did so.

"Mr. WALSH. . . . And this provision of the Senate committee seeks to limit the inspection to one visit unless the commissioner indicates that there is necessity for further examination?

"Mr. PENROSE. That is the purpose of the amendment.

"Mr. WALSH. . . . I heartily agree with the beneficial results that the amendment will produce to the taxpayer.

"Mr. PENROSE. I knew the Senator would agree to the amendment, and it will go a long way toward relieving petty annoyances on the part of honest taxpayers." 61 Cong. Rec. 5855 (Sept. 28, 1921).[13]

Congress recognized a need for a curb on the investigating powers of low-echelon revenue agents, and consid-

---

[13] Other relevant legislative history to like effect may be found in H. R. Rep. No. 350, 67th Cong., 1st Sess., 16 (1921); S. Rep. No. 275, 67th Cong., 1st Sess., 31 (1921); 61 Cong. Rec. 5202 (Aug. 18, 1921), remarks of Mr. Hawley. The provision was re-enacted in 1926. In the Senate, a substitute measure was adopted which would have limited the Commissioner to two examinations appertaining to returns of any one year. Senator Reed's objection to the original provision was: "By merely claiming fraud the Government at any time can make examination after examination, subject only to one limitation, that it must give notice that it is going to make the examination. That, in ordinary course, is done by the mere writing of a letter," 67 Cong. Rec. 3856 (Feb. 12, 1926). There is no indication in the discussion that the courts were thought to play any significant limiting role. The Senate substitute was ultimately deleted by the Conference Committee and the original provision resubstituted. H. R. Rep. No. 356, 69th Cong., 1st Sess., 55. The section was re-enacted in 1939 and 1954 without substantial change and without further elaboration of the congressional intent. Respondent contends that in re-enacting the provision, Congress must have been aware of, and acquiesced in, decisions of lower courts that a showing of probable cause is required. *In re Andrews' Tax Liability,* 18 F. Supp. 804 (1937); *Zimmermann* v. *Wilson,* 105 F. 2d 583 (C. A. 3d Cir. 1939); *In re Brooklyn Pawnbrokers,* 39 F. Supp. 304 (1941); *Martin* v. *Chandis Securities Co.,* 128 F. 2d 731 (C. A. 9th Cir. 1942). These cases represent neither a settled judicial construction, see *In re Keegan,* 18 F. Supp. 746 (1937), nor one which we would be justified in presuming Congress, by its silence, impliedly approved. Compare *Shapiro* v. *United States,* 355 U. S. 1.

ered that it met this need simply and fully by requiring such agents to clear any repetitive examination with a superior. For us to import a probable cause standard to be enforced by the courts would substantially overshoot the goal which the legislators sought to attain. There is no intimation in the legislative history that Congress intended the courts to oversee the Commissioner's determinations to investigate. No mention was made of the statute of limitations [14] and the exception for fraud.

We are asked to read § 7605 (b) together with the limitations sections. in such a way as to impose a probable cause standard upon the Commissioner from the expiration date of the ordinary limitations period forward. Without some solid indication in the legislative history that such a gloss was intended, we find it unacceptable.[15] Our reading of the statute is said to render the first clause of § 7605 (b) surplusage to a large extent, for, as interpreted, the clause adds little beyond the relevance and materiality requirements of § 7602. That clause does appear to require that the information sought is not already within the Commissioner's possession, but we think its primary purpose was no more than to emphasize the responsibility of agents to exercise prudent judgment in wielding the extensive powers granted to them by the Internal Revenue Code.[16]

[14] Revenue Act of 1921, § 250 (d), 42 Stat. 265, provided a four-year period of limitation on ordinary tax liability.

[15] The contrary view derives no support from the characterization of the limitations provision as a "statute of repose." The present three-year limitation on assessment of ordinary deficiencies relieves the taxpayer of concern for further assessments of that type, but it by no means follows that it limits the right of the Government to investigate with respect to deficiencies for which no statute of limitations is imposed.

[16] The Court of Appeals appears to have been led astray by the fact that the Government argued its case on the premise that § 7604 (b) was the governing statute.

This view of the statute is reinforced by the general rejection of probable cause requirements in like circumstances involving other agencies. In *Oklahoma Press Pub. Co.* v. *Walling*, 327 U. S. 186, 216, in reference to the Administrator's subpoena power under the Fair Labor Standards Act, the Court said "his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations," and accordingly applied the view that inquiry must not be " 'limited . . . by forecasts of the probable result of the investigation.' " In *United States* v. *Morton Salt Co.*, 338 U. S. 632, 642–643, the Court said of the Federal Trade Commission, "It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." While the power of the Commissioner of Internal Revenue derives from a different body of statutes, we do not think the analogies to other agency situations are without force when the scope of the Commissioner's power is called in question.[17]

III.

Reading the statutes as we do, the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired. He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the

---

[17] See 1 Davis, Administrative Law, § 3.12 (1958).

information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed—in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect. This does not make meaningless the adversary hearing to which the taxpayer is entitled before enforcement is ordered.[18] At the hearing he "may challenge the summons on any appropriate ground," *Reisman v. Caplin*, 375 U. S. 440, at 449.[19] Nor does our reading of the statutes mean that under no circumstances may the court inquire into the underlying reasons for the examination. It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused.[20] Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing, as was made in this case, that the statute of limitations for ordinary deficiencies has run or that the records in question have already been once examined.

[18] Because § 7604 (a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply, *Martin v. Chandis Securities Co.*, 128 F. 2d 731. The proceedings are instituted by filing a complaint, followed by answer and hearing. If the taxpayer has contumaciously refused to comply with the administrative summons and the Service fears he may flee the jurisdiction, application for the sanctions available under § 7604 (b) might be made simultaneously with the filing of the complaint.

[19] See 1 Davis, Administrative Law, § 3.12 (1958).

[20] See Jaffe, The Judicial Enforcement of Administrative Orders, 76 Harv. L. Rev. 865 (1963).

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.                    *It is so ordered.*

Mr. Justice Douglas, with whom Mr. Justice Stewart and Mr. Justice Goldberg concur, dissenting.

Congress, by the three-year statute of limitations that bars assessments of tax deficiencies except (so far as relevant here) in case of fraud, 26 U. S. C. §§ 6501 (a) and (c), has brought into being a "statute of repose" [1] that I would respect more highly than my Brethren. I would respect it by requiring the District Court to be satisfied that the Service is not acting capriciously in reopening the closed tax period. Since the agency must go to the court for process to compel the production of the records for the closed tax period, I would insist that the District Court act in a judicial capacity, free to disagree with the administrative decision unless that minimum standard is met.[2]

*Oklahoma Press Pub. Co.* v. *Walling,* 327 U. S. 186, does not seem to me to be relevant. It dealt with the usual investigative powers of administrative agencies; and as the Court said in that case, Congress set no standards for administrative action which the judiciary first had to weigh and appraise.[3]  *Id.,* 215–216.  Here

---

[1] See the remarks of Senators Smith, Ashurst, and Reed in 67 Cong. Rec. 3852–3853.

[2] The First Circuit requires the Commissioner to show that "a reasonable basis exists for a suspicion of fraud," *O'Connor* v. *O'Connell,* 253 F. 2d 365, 370; the Ninth Circuit requires that the decision to investigate for fraud appear as "a matter of rational judgment based on the circumstances of the particular case," *De Masters* v. *Arend,* 313 F. 2d 79, 90; the Third Circuit requires that the agent's suspicion of fraud be "reasonable" in the eyes of the District Court. 325 F. 2d 914, 916.

[3] The case is more like *United States* v. *Morton Salt Co.,* 338 U. S. 632, where, as respects the power of the Federal Trade Commission

60

we have a congressional "statute of repose" embodied in the three-year statute of limitations. I would make it meaningful by protecting it from invasion by mere administrative *fiat*. Where the limitations period has expired, an examination is presumptively "unnecessary" within the meaning of § 7605 (b)—a presumption the Service must overcome. That is to say, a re-examination of the taxpayer's records after the three-year period is "unnecessary" within the meaning of § 7605 (b), unless the District Court is shown something more than mere caprice for believing fraud was practiced on the revenue. Without that minimum safeguard the statutory status of repose becomes rather meaningless.

---

to require issuance of "special" reports, the Court reserved the right to prevent the "arbitrary" exercise of that administrative power. *Id.*, at 654.