**UNITED STATES of America**

v.

**Dolores SNYDER, a/k/a Dolores Mastascusa, Dolores Miller, Rachael Miller.**

Crim. No. 78-204.

United States District Court,
W. D. Pennsylvania.

March 23, 1979.

Edward J. Schwabenland, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Allen N. Brunwasser, Pittsburgh, Pa., for defendant.

## MEMORANDUM

MARSH, District Judge.

Defendant has filed a motion seeking to suppress evidence which allegedly was gathered by the Internal Revenue Service (IRS) through improper use of administrative summonses. An evidentiary hearing as required by *United States v. Genser*, 582 F.2d 292 (3rd Cir. 1978), was held on January 3, 1979, and continued on February 20, 1979. Proposed findings of fact were submitted to the court on March 20, 1979.

At the hearing, the government presented evidence to show that the investigation of the defendant arose from an IRS office audit of a tax return filed on behalf of Mrs. Margaret C. Berger who died in December 1974. In reviewing the medical expenses shown on that return, the IRS auditor sent letters to several women including the defendant seeking to confirm that the women had worked and received income as nurses for Mrs. Berger. The defendant returned her letter to the IRS with a signed statement that IRS had contacted the wrong person. Noting a similarity between the defendant's signature and the endorsements on the checks apparently written to the defendant by Mrs. Berger, the IRS auditor referred the matter to the Intelligence Division which began an investigation in February 1976.

In early March 1976, the defendant was interviewed by IRS Agent Deborah Parks who advised the defendant of her constitutional rights and stated that defendant's income tax liability was being investigated. The defendant identified her signature on the IRS letter, but she asserted that the endorsements on the Berger checks were not hers.

Thereafter, the IRS issued six administrative summonses between April 22 and November 16, 1976, in connection with the investigation of defendant's tax liability. The first summons was directed to Keith Miller, defendant's son, whose name appeared as a second endorsement on a check apparently issued to the defendant as nursing income. Two summonses were issued to Mellon Bank requesting signature cards, ledger sheets, and all deposit tickets and items deposited in defendant's account at that bank during 1973 and 1974.

A fourth summons was issued to Pittsburgh National Bank requesting checks written on the account of a Mrs. Rubenstein payable to the defendant for nursing services. A similar summons was issued for Mrs. Rubenstein's account at Mellon Bank. The sixth summons was issued to the De-

partment of Public Assistance to determine the *truthfulness of defendant's assertion* that she had been unemployed and had received welfare payments during 1973 and 1974.

No summons was issued after November 16, 1976. The investigation was concluded on March 10, 1977, when Agent Parks submitted her final report and recommended that the defendant be prosecuted for failure to file income tax returns for 1973 and 1974. Agent Parks' report was reviewed by her immediate superiors and by IRS officials at higher levels. Subsequently, the Regional Counsel recommended to the Department of Justice that the defendant be prosecuted.

On the basis of the evidence presented, the court must conclude that each of the six summonses was issued before the IRS recommendation to the Department of Justice and that no summons was issued after that recommendation. *See United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Indeed, no summons was issued after the agent recommended prosecution. *See United States v. Genser (Genser II),* 595 F.2d 146 (3rd Cir. 1979).[1]

Furthermore, in examining these summonses in light of the elements of good faith discussed in *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the court concludes: that each summons was issued as part of a legitimate investigation to determine the defendant's liability for income tax; that each summons sought relevant information not already in the possession of IRS; and, that each summons was issued only after the required administrative procedures had been followed. Each summons contributed in some way to the civil inquiry by IRS. The summonses were not issued improperly.

The defendant argues that Agent Parks' recommendation for prosecution was im-

properly influenced by the fact that the agent had been assaulted on April 22, 1976, by Jeffrey Snyder who later married the defendant. There is no evidence to support this contention of improper motive on the part of Agent Parks. It would appear that the motivation for Snyder's assault on the agent was the fact that an investigation of defendant's tax liability was already in progress. This investigation was prompted by the defendant's statements denying that she received income as a nurse. With this denial of tax liability, the defendant placed herself in a category different from that of the other women contacted by IRS, each of whom acknowledged receipt of the nursing income. See testimony of Vernon Carpenter on February 20, 1979. Defendant's selective prosecution argument is without merit.

The motion to suppress evidence will be denied.

---

1. In *Genser II,* the court noted that
   "under *LaSalle,* the subjective intent of the agent issuing the summons does not bind the IRS as an institution. Drawing from this axiom, we believe that summonses issued by an investigating agent before that agent recommended prosecution would be virtually unassailable."
   at 151.