729 P.2d 1063

UNION PACIFIC RAILROAD COMPANY, Oregon-Washington, Railroad and Navigation Company and Oregon Short Line Railroad Company, Plaintiffs-Respondents,

v.

Larry G. LOONEY, Carol M. Dick, Darwin L. Young, and Morgan Munger, each as a Commissioner and acting as the Idaho State Tax Commission, Defendants-Appellants.

BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff-Respondent,

v.

Larry G. LOONEY, Carol M. Dick, Darwin L. Young, and Morgan Munger, each as a Commissioner of the Idaho State Tax Commission and Acting as the Idaho State Tax Commission, Defendants-Appellants.

No. 15974.

Supreme Court of Idaho.

Oct. 29, 1986.

Rehearing Denied Dec. 16, 1986.

Jim Jones, Atty. Gen., Charles A. Daw, Deputy Atty. Gen. (argued), Boise, for defendants-appellants.

Eugene A. Ritti (argued), Richard G. Smith (appeared), Boise, for plaintiffs-respondents.

1986 OPINION NO. 92, ISSUED JUNE 12, 1986, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

## ON DENIAL OF PETITION FOR REHEARING

HUNTLEY, Justice.

The Idaho State Tax Commission (commission) appeals the district court's order granting a writ of prohibition against the commission concerning the commission's request to obtain certain documents to be used for appraisal purposes.

The commission appeals, claiming, among its assignments of error, that the district court applied an incorrect standard to determine the relevance of the information sought by the commission.

The Union Pacific Railroad and the Burlington Northern Railroad (railroads) own and operate national railway systems which operate in Idaho. The Idaho operating properties of both systems are assessed annually for ad valorem tax purposes by the commission. The commission values the railroads based on their market values. IDAPA 35.03. 202.a. To aid the commission in preparing these assessments, the railroads are required by I.C. § 63–701 *et seq.* to provide certain information to the commission.

As part of the assessment process the commission wrote to the railroads in January 1984 enclosing the blank annual statement forms required under I.C. § 63–706 and amending the notice section of the form to request several documents including "a copy of any long-range or strategic plan prepared in whole or in part during the calendar year 1983." The railroads filed a motion to quash the request with the commission. The motion was denied.

The railroads petitioned the district court for a writ of prohibition to quash the requests of the commission. At trial, the railroads produced three witnesses to show that the strategic plans were "forward looking" and too speculative to be effectively used in the assessment process. Mr. Rebensdorf, the vice president for planning

analysis for Union Pacific Railroad, testified: (1) that the distribution of the strategic plan was generally limited to high-level management personnel in the Union Pacific Railroad; (2) that the strategic plan is a "living document" which changes over time; (3) that the release of information in the strategic plan to a competitor would be harmful and therefore its production would have a chilling effect on the railroads' planning process; and (4) that the release of the information to the commission would lead to general release because the commission would release the information to the Multi-State Tax Commission. Mr. Strong, employed by the commission for about seven years as an appraiser of railroad and utility properties, testified that he had never heard of a strategic plan being used in an appraisal and that he did not believe that such a plan would be useful in the appraisal process. He testified that he had appraised over 180 companies. Dr. Pratt, a financial analyst, testified that a strategic plan has no part in the valuation process because it depends on the occurrence of events which are not certain to happen and is biased by the analyst's hopes and expectations about the future of the company. He testified that an appraisal should be based on what the company is worth now and not what someone in the company believes it will be worth in the future. He testified that reliable information concerning the railroads can be had from investment banks at a low cost.

The commission produced two witnesses to show that the strategic plan could be used in some assessment procedures. Mr. Goodwin, an appraiser from Kansas, testified that some assessors use what is known as the discounted cash flow model of appraisal. He testified that "for appraising under this model, some elements [of the strategic plan] would be very helpful." He also testified that other sources of information about the future value of the railroads is more expensive than the railroads' testimony would indicate. Mr. Goodwin testified that he believed that the strategic plan would provide more accurate information than could be found in the marketplace

because management has a better view of the company's performance than most analysts. Dr. Cornell, a U.C.L.A. professor, testified for the state that the strategic plan would be useful in assessing a utility under the discounted cash flow method. Finally, counsel for the commission argued that the strategic plan contains many conclusions and projections which are relevant to the assessment process. Primarily, the plan may contain a resolution of whether the cash flow from railroad assets is expected to grow due to inflationary pressures which were predictable at the time of the assessment. Counsel argued that such potentially relevant material as cap rate determinations, equipment expense projections, replacement costs, and inflation rate predictions for labor costs, capital costs and revenue increases might appear in the strategic plan. According to counsel, the plan might also contain predictions concerning regulatory changes and other forces affecting the competitive environment of the railroads, all of which could affect the market value of the railroad.

The district court held that the following standard applies to determine the relevance of information requested by the commission:

1. The demand for the strategic plans must not exceed the commission's investigatory powers.

2. The strategic plans must be reasonably relevant to the commission's purpose.

3. The commission's need for the plans must outweigh the burden suffered by the railroads in releasing the information.

The district court accepted Cooper's interpretation of this rule:

[i]f the agency has made an initial showing that the desired information may be reasonably relevant, the burden shifts to the respondent to disprove its relevancy; and the courts are generally inclined to overrule a defense of irrelevancy unless the party resisting the subpoena makes it appear plainly to the court that the documents in question are clearly irrelevant,

or that they have no potential relevancy.

1 F. Cooper, *State Administrative Law,* 301 (1965).

The court held that the commission did not meet its burden of proving the relevance of the information because the court heard no evidence to indicate that Idaho would use the discounted cash flow method of appraisal, the only method to which the strategic plan might be relevant. Further, the court held that the damage to the railroads from releasing the information would be greater than the commission's need for the information.

## I.

■ The district court chose the correct standard to determine the relevance of the information requested by the commission. It has long been established that the court should grant significant deference to the discovery requests of administrative agencies. *See United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). As stated in *Morton Salt:* "[I]t is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.'" 338 U.S. at 652–653, 70 S.Ct. at 369, quoting *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946). Both federal and state courts have interpreted *Morton Salt* to require a test substantially similar to that used by the district court. *See, e.g., Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1266 (7th Cir.1982); *Central Maine Power Co. v. Maine Public Utilities Commission,* 395 A.2d 414, 426 (Me.1978); *Yellow Freight Systems, Inc. v. Kansas Commission on Civil Rights,* 214 Kan. 120, 519 P.2d 1092, 1096 (1974).

## II.

■ The district court correctly ruled that the initial burden of proving the relevance of the requested documents is on the commission. Placing the burden of proof on the commission is in accord with United States Supreme Court authority. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). In *Powell,* the Court said about the Commissioner of Internal Revenue's attempts to discover certain materials that the Commissioner "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be *relevant* to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed. . . ." [Emphasis added.] Under *Powell,* the Idaho State Tax Commission had the initial burden of proving the relevance of the railroad's strategic plan to the valuation of the railroad.

■ On Petition for Rehearing Union Pacific urges that no evidence demonstrated the *necessity* of the strategic plan to proof of the railroad's value and that the district court therefore properly refused discovery of the plan. The argument does not persuade us for three reasons. First, the test is one of relevancy, not necessity. Second, even though it might be possible to formulate a valuation without the data contained in the plan, that data is relevant if it would assist in arriving at a more accurate or appropriate appraisal or appraisal technique. Third, even Union Pacific admits the plan could be relevant to contradict or impeach other evidence of valuation. In that capacity the plan would be relevant to valuation.

■ During oral argument before this court, counsel for the tax commission stated he had demanded *in camera* review of the strategic plan by the trial court as a preface to ruling on its production and admission. Counsel for Union Pacific did not dispute this assertion at oral argument. Union Pacific now contends that the transcript on appeal reflects no such demand and that the issue was therefore lost for purposes of appeal.

The pre-trial district court proceedings included a petition for writ of prohibition blocking the tax commission from discovery of Union Pacific's strategic plan. The trial hearings took place on July 9 and 10, 1984. On December 14, 1984, the district court filed a memorandum decision granting the writs. Whether the commission made such a demand is determinative of whether the failure to conduct an *in camera* review is appealable.

If on further hearing before the trial court it is determined that the commission did request an *in camera* review, this court's opinion stands as hereinabove written. If, on the other hand, further hearing results in a determination by the trial court that the commission made no demand upon the district court for an *in camera* review, then that issue was lost for purposes of appeal and the district court's denial of the commission discovery request for the strategic plan is affirmed. *See In re Bowen,* 95 Idaho 334, 508 P.2d 1240 (1973); *Hamley v. J.R. Simplot Co.,* 94 Idaho 794, 498 P.2d 1267 (1972); *Beehive Medical Electronics, Inc. v. Square D. Co.,* 669 P.2d 859 (Utah 1983).

Costs to appellants.

DONALDSON, C.J., and BISTLINE, J., concur.

BAKES, Justice, dissenting:

This case was tried to the district court without a jury. The district court, in a comprehensive memorandum opinion, made findings of fact and conclusions of law. I.R.C.P. 52(a) provides that those findings will be upheld on appeal unless they are "clearly erroneous."

The Court today reverses the decision of the district court without even discussing the district court's findings, much less identifying evidence, or the lack of it, in the record which establishes that those findings are clearly erroneous. This Court, in effect, has redecided this case *de novo*, ignoring the findings which the district court made.

The district court, after an extensive trial solely on this issue, found that the strategic plan of the railroad was a future planning document, which had no relationship to the existing assets or value of the railroad. The district court found that the plan makes "no distinction ... between assets in existence as of the particular date and the assets which it intends or hopes to acquire in the future." All of the expert witnesses, and there were several of them on both sides, testified that such a strategic plan had never been used in assessing a railroad and that it was not necessary to have the strategic plan in order to value the railroad. One expert testified, as the district court recited, "Not only has he never used [a strategic plan] nor has any other taxing authority, but it would be totally unworkable to use strategic plans."

Furthermore, there was additional evidence, and the district court found, that the public disclosure of the railroad's strategic plan "would be devastating" to the railroad because of its effect on the railroad's competitors, suppliers, labor negotiations, etc. The district court correctly found the law to be, and this Court has not disagreed, that where the information sought is not reasonably relevant, or even if there is some relevance, if its disclosure would be unreasonably burdensome to the taxpayer, then disclosure should not be ordered, *citing Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The district court further cited the more recent federal decision in *FTC v. Shaffner,* 626 F.2d 32, 38 (7th Cir. 1980), in which that court held:

"What is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question."

The district court accepted the testimony of the expert witness who stated that it would be "unworkable to use strategic plans" to assess railroads and found that the request was unreasonable and would place a burden on the railroad, was not necessary, and thus was of no relevance in the assessing process. Those findings are

adequately supported by the testimony of the several expert appraisal witnesses and, accordingly, the findings are not "clearly erroneous."

Therefore, the decision of the district court should be affirmed. The Court's decision today, which simply ignores the district court's findings and the voluminous evidentiary record which supports those findings, violates the most basic tenet of appellate review as reflected in this Court's own rules. I.R.C.P. 52(a) mandates that the district court's findings, if not clearly erroneous, be affirmed. This Court errs when it simply ignores the district court's findings and decides this case as if it were the trial court.

SHEPARD, J., concurs.