NEWPORT NEWS SHIPBUILDING
AND DRY DOCK COMPANY,
Plaintiff,

v.

William H. REED, et al., Defendants.

UNITED STATES of America,
Petitioner,

v.

NEWPORT NEWS SHIPBUILDING
AND DRY DOCK COMPANY,
Respondent.

Civ. A. No. 86–182–NN.
Misc. No. 87–5–NN.

United States District Court,
E.D. Virginia,
Newport News Division.

March 20, 1987.

---

K. Martin Worthy, John G. DeGooyer, Maureen Duignan and Theodore A. Howard, Hamel & Park, Washington, D.C., Shannon T. Mason, Jr., Mason, Gibson, Cowardin & Martin, Newport News, Va., for plaintiff.

Michael A. Rhine, Asst. U.S. Atty., U.S. Atty's. Office, Norfolk, Va., Surell Brady and David M. Souders, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

Michael A. Rhine, Asst. U.S. Atty., U.S. Atty's. Office, Norfolk, Va., Surell Brady and David M. Souders, Dept. of Justice, Civil Div., Washington, D.C., John J. Quill and Kirk Moberley, Defense Contract Audit Agency, Alexandria, Va., for petitioner.

Shannon T. Mason, Jr., Mason, Gibson, Cowardin & Martin, Newport News, Va., K. Martin Worthy, John G. DeGooyer, Maureen Duignan and Theodore A. Howard, Hamel & Park, Washington, D.C., for respondent.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on the government's Petition for Summary Enforcement of a Defense Contract Audit Agency (DCAA) subpoena duces tecum served on the Newport News Shipbuilding and Dry Dock Company (Newport News). The subpoena demands that Newport News produce certain internal audit materials generated by Newport News between January 1, 1986 and the present. Newport News refused to produce the requested materials and filed a Complaint for Declaratory Relief on November 14, 1986. The government, on January 26, 1987, responded to Newport News' Complaint with a 12(b)(1) Motion to Dismiss. In addition, on the same day, the government filed a Petition for Summary Enforcement of the DCAA's subpoena and an Order to Show Cause why the subpoena should not be enforced.

Both parties have filed various reply briefs.

On March 9, 1987, the Court heard oral argument from both parties on the government's Show Cause Order. At this hearing, the Court decided that the question of jurisdiction over Newport News' original Complaint was no longer at issue because the government had filed its Motion for

Summary Enforcement and that the Court thus had jurisdiction to hear the case.

As a result of the hearing, and based on the briefs and other materials submitted to the Court since the hearing, the Court finds before it one central issue which is dispositive of this case. That issue is whether the DCAA has the statutory authority under 10 U.S.C.A. § 2313(d)(1) to subpoena Newport News' internal audit reports and other related materials.

Accordingly, for the reasons set forth below, the Court finds the DCAA does not have such subpoena authority and DENIES the government's Petition for Summary Enforcement of the DCAA subpoena.

*Facts*

Newport News Shipbuilding and Dry Dock Company, a Virginia corporation, designs, repairs and constructs vessels for the United States Navy and for commercial customers. The record reflects that Newport News conducts 98 percent of its business with the United States Navy. Newport News employs nine auditors who work in the Company's Internal Audit Department. The Audit Department functions as an independent management control which periodically reviews and appraises the soundness, adequacy and effectiveness of all accounting, financial and operational controls of the Company. In addition, the Audit Department serves corporate management by providing it with evaluations and recommendations for strengthening and protecting corporate controls and assets and for improving operating efficiency. The auditors review employee time cards, subcontractor invoices, journal vouchers, summary cost records and other direct and indirect contract costs. Once an audit is completed, a final report is prepared which includes findings and recommendations to management.

The internal audits are directed to business functions rather than to individual contracts or projects. Therefore, it is not possible to assign the costs of any particular audit to a particular government contract. The internal audits are called "general and administrative" expenses and are allocated and charged to the government as overhead. Newport News regards these internal audit reports as proprietary and confidential and believes that disclosure of these reports outside the Company would diminish the effectiveness of the internal audits.

The Department of Defense (DOD) retains its own auditors who work for the Defense Contract Audit Agency (DCAA). These DCAA auditors have working space located in the Newport News Shipyard. The DCAA performs all contract audits for the DOD and provides financial advisory services to DOD officials responsible for negotiation, administration and settlement of all contracts between the DOD and defense contractors. Because the DOD ultimately pays for most of the overhead expenses incurred by Newport News, including the expense of Newport News' internal auditors, the DCAA may have a right to review the allowability and allocability of internal audit expenses. These figures have already been furnished to DCAA. The Court concludes that what DCAA now wants is the work product of the internal audit. It is at this point that Newport News draws the line. By statute, the DCAA is authorized to subpoena from contractors certain materials necessary to fulfill their auditing functions. *See* 10 U.S.C.A. § 2313(d)(1).

The controversy in this case arose when Newport News refused to produce documents pursuant to an administrative subpoena issued by the DCAA on October 24, 1986. This subpoena required Newport News to produce:

Schedules of internal audits performed or expected to be accomplished, working papers generated during any audit, written summary reports on the results of [the] audit, follow-up action taken by [Newport News] in response to internal audit recommendations and any time-charging records of the employees assigned to the internal audit department for the period 1 January to the present.

Newport News refused to produce some of these materials because it believed the subpoena was invalid. Newport News states

that the DCAA lacks the authority to subpoena such materials and that the information sought is irrelevant to any legitimate inquiry of the DCAA. Newport News further asserts that the subpoena is over broad and that production of the requested materials would be unduly burdensome and would constitute an illegal intrusion into its internal management affairs.

On the other hand, the government asserts that because it pays indirectly for the internal audits, it should be allowed to fully examine the audits, to determine if the costs of the internal audits have been properly charged to the DOD, if Newport News' accounting system is accurate, and to determine if Newport News is effectively combating waste, fraud and abuse. In short, the DCAA is trying to determine Newport News' fitness as a defense contractor and whether the government has received what it has paid for under its contracts with Newport News.

### DCAA's Subpoena Power

The DCAA's power to subpoena is conferred by statute and reads as follows:

§ 2313. Examination of books and records of contractor.

(a) An agency named in section 2303 of this title is entitled, through an authorized representative, to inspect the plant and audit the books and records of—

(1) a contractor performing a cost or cost-plus-a-fixed-fee contract made by that agency under this chapter; and

(2) a subcontractor performing any subcontract under a cost or cost-plus-a-fixed-fee contract made by that agency under this chapter.

* * * * * *

(d)(1) The Director of the Defense Contract Audit Agency (or any agency) may require by subpoena the production of books, documents, papers or records of a contractor, access to which is provided to the Secretary of Defense by subsection (a) or by section 2306(f) of this title. (2) Any such subpoena, in the case of contumacy or refusal to obey, shall be enforceable by order of an appropriate United States district court.

10 U.S.C.A. § 2313(a), (d)(1)(2) (West 1983 & Supp.1986). Although Section 2313(d)(1) confers subpoena power to the DCAA, the subsection refers to the books, etc. "access to which is provided ... by subsection (a) or by section 2306(f) of this title." A reading of Section 2306(f)(5) reveals the general categories of items the DCAA may subpoena:

§ 2306. Kinds of contracts; cost or pricing data; truth in negotiation.

* * * * * *

(f)(5) For the purpose of evaluating the accuracy, completeness, and currency of *cost or pricing data* required to be submitted by this subsection, any authorized representative of the head of the agency who is an employee of the United States Government shall have the right, until the expiration of three years after final payment under the contract or subcontract, to examine all books, records, documents and other data of the contractor or subcontractor related to the proposal for the contract, the discussions conducted on the proposal, pricing or performance of the contract or subcontract. (Emphasis supplied.)

10 U.S.C.A. § 2306(f)(5) (West 1983 Supp. 1986). The government contends that Section 2306(f)(5) gives the DCAA power to subpoena all records and documents which relate either directly or indirectly to a particular defense contract. However, the Court cannot adopt this interpretation. The Court is convinced that Section 2306(f)(5) limits the DCAA's subpoena power to the extent that the DCAA may not force Newport News to produce its internal audit reports and other related materials.

The Court's decision is based on the legislative history surrounding Section 2313(d)(1), the implementing regulations found in the Federal Acquisition Regulations, 48 C.F.R. 52.215–2(a)(b) (1986) and on an examination of the Inspector General Act of 1978, 5 U.S.C.A.App. 3, §§ 1 to 8 (West 1967 & Supp.1986).

### I. *Legislative Background*

Various Congressional reports, hearings and commissions indicate that Congress in-

tended to limit the DCAA's subpoena power to those materials which are related to costs incurred in the negotiations, proposals and performance of particular contracts. The legislative history offered by plaintiff also shows that Congress did not license the DCAA for any "fishing expeditions through corporate records." See 131 Cong.Rec. § 6966 (Daily ed. May 23, 1985) (Statement of Senator Byrd).

The Court concludes that Section 2313(d)(1) did not expand in any manner the scope of DCAA's access to records but merely provided the DCAA with subpoena authority for enforcement of its existing rights to a contractor's books and records. The following legislative history accompanying the DOD Authorization Act of 1986 is pertinent:

> *This provision is not intended to expand the scope of books, documents, papers or records to which the defense contract audit agency presently has access* [under Section 2306(f)(5)], but rather to provide the Director of the Agency with an enforcement mechanism if a contractor does not make such books, documents, papers or records readily available. The conferees believe that the subpoena power should be used sparingly.... In addition, it should be used only in the performance of the functions and purposes ascribed to the contract audit agency. (Emphasis supplied.)

H.R. 81, 99th Cong., 1st Sess. 461, *reprinted in* 1985 U.S.Cong. & Ad.News 472, 616.

Further support for Newport News' assertion that the DCAA's subpoena power is limited is the following Senate colloquy:

> SENATOR EAGLETON. Mr. Taft testified, speaking of the Defense Contract Audit Agency, page 12 of his testimony:
>> DCAA advises DOD acquisition officials and audits contractors' financial procedures and operations for DOD, and for many civilian agency Inspectors General. *Its principal mission is an advisory role in the acquisition process, not oversight of DOD operations. DCAA is simply not primarily a review and oversight organiza-*

> *tion.* It is an integral part of day-to-day program management.
> MR. SHERICK. DCAA does audit contracts after they are entered into. They review the pricing of the contract, but also review incurred costs during performance of the contract. That is a part of their audit function.
> SENATOR EAGLETON. But it is not primarily their function.
> MR. SHERICK. *Their prime mission is, first of all, to be an advisor to the negotiating team.*
> 
> \*    \*    \*    \*    \*    \*
> 
> As Mr. Taft said, *a primary activity is the initial review of proposals, contractor bids, et cetera, as an aid to the negotiating team.* They are a very definite part of the negotiating team and their recommendations contribute to determination of the successful bidder. (Emphasis added.)

*Inspectors General Legislation,* Hearings Before the Senate Committee on Governmental Affairs, 97th Cong., 1st Sess. part 1, at 30 (June 18, 1981). The following excerpts from a Presidential Commission Report are also pertinent:

> Government action should not impede efforts by contractors to improve their own performance. The Commission is concerned that, for example, overzealous use of investigative subpoenas by Defense Department agencies may result in less vigorous internal corporate auditing.
> 
> \*    \*    \*    \*    \*    \*
> 
> Government actions should foster contractor self-governance. DOD should not, for example, use investigative subpoenas to compel such disclosure of contractor internal auditing materials as would discourage aggressive self-review.

Final Report by the President's Blue Ribbon Commission on Defense Management, "A Quest for Excellence," at xxviii, xxix.

Thus, the language of the statute itself and certain excerpts from the legislative history of Section 2306(f)(5) and Section 2313(d)(1) do appear to limit the DCAA's authority to subpoena only those books and

records, etc. which relate to costs of a particular contract.

## II. *Implementing Regulations*

The federal regulations which implement Section 2306(f)(5) and hence Section 2313(d)(1) also limit the DCAA's subpoena authority to cost-related data. Federal Acquisition Regulation, 48 C.F.R. § 52.215–2(a)(b) (1986) states:

(a) *Examination of costs.* If this is a cost-reimbursement, incentive, time-and-materials, labor-hour, or price-redeterminable contract, or any combination of these, the Contractor shall maintain— and the Contracting Officer or representatives of the Contracting Officer shall have the right to examine and audit— books, records, documents, and other evidence and accounting procedures and practices, sufficient to reflect properly all costs claimed to have been incurred or anticipated to be incurred in performing *this contract.* This right of examination shall include inspection at all reasonable times of the Contractor's plants, or parts of them, engaged in performing the contract.

(b) *Cost or pricing data.* If, pursuant to law, the Contractor has been required to submit cost or pricing data in connection with pricing *this contract* or any modification to this contract, the Contracting Officer or representatives of the Contracting Officer who are employees of the Government shall have the right to examine and audit all books, records, documents, and other data of the Contractor (including computations and projections) *related to negotiating, pricing, or performing the contract or modification,* in order to evaluate the accuracy, completeness, and currency of the cost or pricing data. The right of examination shall *extend to all documents necessary to permit adequate evaluation of the cost or pricing data submitted, along with the computations and projections used.* (Emphasis added.)

The language of this regulation which specifically implements Section 2306(f)(5) indicates that the government, in the case *sub judice,* is not entitled to Newport

News' internal audit reports. The internal audit reports are used mainly for internal management control and are not actually pricing data subject to the DCAA's subpoena. The undisputed facts also indicate that although the government pays for these internal audits, the payments represent "general and administrative" expenses which are charged to the government as overhead. This overhead charge does not relate to any specific government contract.

■ Therefore, based on the legislative history and the limiting language in Section 2306(f)(5) and in Section 2306(f)(5)'s implementing regulations, the Court finds that Newport News' internal audit reports themselves are not cost or pricing data related to the negotiation, pricing or performance of a particular defense contract.

As previously stated, Newport News has agreed to make available to the DCAA the salaries, hours worked and other expenses incurred in preparing its internal audits. The Court finds that the DCAA can fulfill its functions by reviewing the bid estimates proposal packages and other contract records Newport News has already made available to the DCAA.

## III. *Inspector General's Power*

Congress, in 1982, devised the office of The Inspector General for the DOD to more effectively combat fraud, waste and mismanagement in the acquisition and performance of DOD contracts. *See* The Inspector General Act of 1978, 5 U.S.C.A. App. 3, §§ 1 to 8 (West Supp.1986). Pertinent portions of the Inspector General Act of 1978 read as follows:

§ 6. Authority of Inspector General; information and assistance from Federal agencies; unreasonable refusal; office space and equipment.

\*   \*   \*   \*   \*   \*

(4) to require by subpena the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act, which subpena, in the case of contumacy or refusal to obey, shall be enforceable by

order of any appropriate United Sates district court: Provided, That procedures other than subpenas shall be used by the Inspector General to obtain documents and information from Federal agencies;

\* \* \* \* \* \*

§ 8. Additional provisions with respect to the Inspector General of the Department of Defense.

\* \* \* \* \* \*

(c) In addition to the other duties and responsibilities specified in this Act, the Inspector General of the Department of Defense shall—

(1) be the principal adviser to the Secretary of Defense for matters relating to the prevention and detection of fraud, waste, and abuse in the programs and operations of the Department;

(2) initiate, conduct, and supervise such audits and investigations in the Department of Defense (including the military departments) as the Inspector General considers appropriate;

(3) provide policy direction for audits and investigations relating to fraud, waste, and abuse and program effectiveness;

(4) investigate fraud, waste, and abuse uncovered *as a result of other contract and internal audits*, as the Inspector General considers appropriate;

(5) develop policy, monitor and evaluate program performance, and provide guidance with respect to all Department activities relating to criminal investigation programs;

(6) monitor and evaluate the adherence of Department auditors to internal audit, contract audit, and internal review principles, policies, and procedures;

(7) develop policy, evaluate program performance, and monitor actions taken by all components of the Department in response to contract audits, internal audits, internal review reports, and audits conducted by the Comptroller General of the United States;

(8) request assistance as needed from other audit, inspection, and investigation units of the Department of Defense (including military departments); and

(9) give particular regard to the activities of the internal audit, inspection, and investigative units of the military departments with a view toward avoiding duplication and insuring effective coordination and cooperation. (Emphasis supplied.)

The above-quoted language gives the Inspector General for the DOD virtually unlimited investigatory power—including the power to subpoena. In fact, it is evident that the DOD's Inspector General can even use the DCAA as its own personnel in initiating, conducting or supervising audits and other investigations. *See United States v. Westinghouse Electric Corp.*, 615 F.Supp. 1163, 1180, *aff'd*, 788 F.2d 164 (3d Cir.1986).

In *Westinghouse*, the Court held that the DOD's Inspector General had the subpoena authority, in the exercise of its own judgment, to subpoena Westinghouse's internal audit reports and turn them over to the DCAA for review even though the DCAA may not have had the authority to subpoena the reports itself. The *Westinghouse* court did not decide whether the DCAA had the authority to subpoena the internal audits itself. Moreover, the exhaustive analysis and ultimate holding in *Westinghouse* in no way suggests that the DCAA's subpoena power gives it the authority to subpoena Newport News' internal audit reports.

Instead, *Westinghouse* reveals that the Inspector General for the DOD would be the proper vehicle for gaining access to Newport News' internal audit reports. On January 27, 1986 the Inspector General for the DOD did issue a subpoena duces tecum on Newport News demanding production of its internal audit reports for the period of January 1, 1982 through December 31, 1983. Newport News refused to produce the subpoenaed materials and filed suit in this Court. Thereafter, the parties settled their dispute and filed a Joint Stipulation of Dismissal.

This Court agrees with Newport News that the DCAA lacks the authority to subpoena their internal audit reports. When the DCAA's purpose under the statute and subpoena power are viewed along side the

Inspector General's statutory purpose and subpoena power, the Court must find that the DCAA is limited to what materials it can and cannot subpoena. Whereas the DCAA's access to contractor records, etc. is limited to pricing and cost data, the Inspector General's subpoena power is not so limited.

Federal courts will enforce an administrative subpoena duces tecum if: (1) the inquiry is within the authority of the agency and is for a proper purpose; (2) the matter requested is reasonably relevant to the inquiry; and (3) the demand is not unreasonably burdensome or broad. *See e.g., United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *United States v. Morton Salt Co.,* 338 U.S. 632, 652–53, 70 S.Ct. 357, 368–69, 94 L.Ed. 401 (1950); *see also United States v. Westinghouse Electric Co.,* 788 F.2d 164, 170 (3d Cir.1986) (subpoena must be relevant to agency's lawful purpose) (citing *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943)).

In the case *sub judice,* the Court has found that the DCAA lacks the statutory authority to subpoena Newport News' internal audit reports. Hence, the three-step analysis set forth above need go no further.

Accordingly, for the reasons set forth above, the Court DENIES the government's Petition for Summary Enforcement of the DCAA Subpoena.

IT IS SO ORDERED.