PAA MANAGEMENT, LTD., Petitioner,

v.

The UNITED STATES of America, Respondent.

No. M24–1 (Part I) (WK).

United States District Court, S.D. New York.

April 8, 1993.

Melvin S. Adess, P.C., Garrett B. Johnson, Kirkland & Ellis, Chicago, IL, for petitioner.

David E. Sipiora, Asst. U.S. Atty., S.D.N.Y., New York City, for respondent.

### OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

I find myself in a rather unusual situation. Having conducted an evidentiary hearing upon remand from the Second Circuit in this action to quash five summonses issued by the Internal Revenue Service (*PAA Management Ltd. v. U.S.* (2d Cir.1992) 962 F.2d 212), and having considered arguments of counsel, I was in the process of preparing a memorandum in support of an order granting petitioner's motion to quash and denying respondent's motion to enforce. At that point, I was advised that Judge John F. Grady of the Northern District of Illinois had come to the opposite conclusion with respect to one identical and several similar summonses (*PAA Management Ltd. v. U.S.* (N.D.Ill.1993) Nos. 91–C–168–170). Upon studying his opinion, I concluded that he, rather than I, had correctly interpreted the Second Circuit's mandate.

In the first place, I note that I am in no way bound by Judge Grady's ruling. In its letter advising me of that ruling, respondent observed that "this court is obviously not bound by Judge Grady's decision." (Letter of March 24, 1993 at 1). However, in a subsequent letter it changed its position and asserted that "under the doctrine of collateral estoppel, [petitioner] is now precluded from litigating that issue in this forum." (Letter of March 30, 1993 at 1). Respondent was right the first time. The doctrine of collateral estoppel is designed to prevent parties from relitigating before a second court a question that has already been decided. However, petitioner is not seeking to relitigate anything. The litigation before me had been concluded prior to the commencement of the hearing before Judge Grady. Nevertheless, for the reasons that follow, I am persuaded that Judge Grady's decision is correct.

#### 1. *My Original Reasoning*

Shortly after the evidentiary hearing had concluded, I issued an interim memorandum for the guidance of counsel in which I set forth my understanding of the Second Circuit's mandate:

> It seems to me beyond cavil that the IRS could have issued the summonses in question for a variety of legitimate purposes, even though it was aware that Tax Court proceedings were about to be commenced by petitioner (or even after such proceedings had started). However, as I have come to understand the law, if despite these legitimate possibilities a taxpayer proves that it was the IRS's sole purpose in issuing the summonses to gather evidence to be used to defend a taxpayer's anticipated (or actual) action in the Tax Court, the summonses should be quashed. Accordingly, the question that seems to be before me is: On all the evidence in the record, am I entitled to—and should I—find that such was in fact the IRS's sole *purpose* in issuing these summonses? (November 9, 1992 Interim Memorandum at 1, emphasis added).

In other words, I interpreted the mandate as requiring me to determine what may have been respondent's *subjective* "purpose" in issuing the summonses. Although I invited the parties to try to "persuade me that some other consideration should be taken into account" (*id.* at 2), neither party made such an attempt. On the contrary petitioner focused its post-trial memorandum on facts suggesting that success in the tax court's proceeding was the sole purpose behind the summonses, while respondent tried to suggest that it might have had in mind some purpose unrelated to those proceedings. For reasons no longer relevant, I found respondent's arguments to be absurd and—as above indicated—was about to enter an order in favor of the petitioner.

#### 2. *Judge Grady's Ruling*

Judge Grady agreed with my assessment of the facts. Thus he concluded:

> I am satisfied from the evidence I have heard today that the only serious purpose of the summonses that were issued in January of 1990 was to facilitate the formula-

tion and preparation of the government's case in the tax court ... (March 11, 1993 Hearing Tr. at 127).

However, Judge Grady disagreed with my view that such conclusion was a sufficient answer to the question presented by the Second Circuit's mandate. Expressing considerable sympathy for petitioner's frustration at the apparently slipshod manner in which respondent had conducted its investigation, he noted that it was not his function "to evaluate the efficiency of the investigative process" (Tr. at 128). He concluded that the deficiencies in respondent's investigative procedures had placed it in a position where, upon petitioner's refusal further to extend the statute of limitations, respondent was unable to make a final determination as to which, if any, of petitioner's claimed deductions should be disallowed. Accordingly, faced with the imminent running of that statute, it took "the most extreme position ... 100 percent disallowance" (Tr. at 126). That 100 percent disallowance is, of course, a position which could not be sustained before the tax court, and the summonses now contested were issued for the purpose of formulating a position that could be so sustained.

In stating his conclusion that the Second Circuit's mandate permitted the summonses, Judge Grady (continuing from the above-quoted excerpt of his opinion) observed that their purpose was:

> not primarily to collect evidence that would support a case that had otherwise been fully prepared. These were summonses designed to enable the government to figure out what its theory was going to be. That seems to me to be a purpose that would be permitted by the decision of the Second Circuit in this case. (Tr. at 127).

As indicated at the outset of this opinion, I agree with Judge Grady's reasoning. In the first place, it makes sense and eliminates the need of resolving the illusive issue of respondent's subjective intent. Moreover, it follows the exact wording of the *per curiam* opinion of Judge Learned Hand's court in *Bolich v. Rubel* (2d Cir.1933) 67 F.2d 894, and the spirit of Justice Harlan's opinion in *United States v. Powell* (1964) 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112.

In *Bolich,* Judge Hand's court made the following observation as to the power to issue summonses in tax investigations:

> Properly, it is not a power to procure or perpetuate evidence at all; it is strictly inquisitorial, justifiable because all the facts are in the taxpayer's hands. Since the Commissioner [now IRS] may apply to the Board [now tax court] to increase the assessment, he may need to prepare his case in advance by a further examination, *which is quite another matter from producing evidence in support of it.* (67 F.2d at 895, emphasis supplied).

In *Powell,* the protesting taxpayer, an attorney, was able to state facts which the Court found to raise an inference that summonses had been issued to punish him for successfully defending clients in other tax prosecutions. In ruling that this particular petitioner was entitled to a hearing on his allegations, the Court cautioned that such a hearing would only be appropriate if the taxpayer were able to produce evidence suggesting that enforcement of the summons might constitute an abuse of the court's own process. Justice Harlan then observed:

> Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other [similar] purpose reflecting on the good faith of the particular investigation. (379 U.S. at 58, 85 S.Ct. at 255).

I interpose the bracketed word "similar" because the tenor of the entire opinion indicates that the suggested exception should be narrowly construed, and that the doctrine of *ejusdem generis* should apply to the illustrative sentence.

### Conclusion

For the foregoing reasons I deny petitioner's motion to quash the summonses before me, and grant respondent's motion to enforce them.