In the Matter of the Application to Enforce Administrative Subpoena Duces Tecum of the UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Applicant,

v.

MURRAY DIRECTOR AFFILIATES, INC., Respondent.

No. M18–304.

United States District Court, S. D. New York.

Oct. 8, 1976.

Paul F. Leonard, Regional Administrator, SEC, Arlington, Va., for applicant; by James E. Tatman, Arlington, Va., of counsel.

Ira J. Raab, Lynbrook, N. Y., for respondent.

## OPINION AND ORDER

WERKER, District Judge.

This is an action by the Securities and Exchange Commission (SEC) to enforce a subpoena *duces tecum* requiring Murray Director Affiliates, Inc. (MDA) to produce certain of its records. MDA seeks to have the subpoena quashed.

On July 30, 1975, the SEC ordered an investigation of several corporations including MDA. The order, issued pursuant to section 20(a) of the Securities Act of 1933 (Securities Act), as amended, 15 U.S.C. § 77t(a), and section 21(a) of the Securities

Exchange Act of 1934 (Exchange Act), as amended, 15 U.S.C. § 78u(a), called for an officer of the SEC to explore possible violations of sections 5(a), 5(c) and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c) and 77q(a), section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 thereunder.[1]

In furtherance of the investigation, the SEC issued a subpoena *duces tecum* to MDA on August 11, 1975. On the advice of its counsel, MDA refused to honor the subpoena. The SEC then brought an action to enforce it in the Eastern District of Virginia. On March 12, 1976, the Honorable D. Dotch Warriner quashed the subpoena in a ruling from the bench. Judge Warriner declined to explain the basis for his decision, but he gave the SEC permission to "start over without prejudice."

Several weeks later, on March 29, 1976, the SEC issued a new subpoena to MDA which required the production of material similar to that sought earlier.[2] When MDA refused to comply with this second subpoena, the SEC obtained an order from the Honorable Gerard L. Goettel which directed MDA to show cause why it should not be required to produce the materials demanded of it.

It seems undisputed that MDA is "engaged in the business of arranging time deposits in specified federally insured banks and savings and loan institutions in return for which the bank or savings and loan will make loans to specified borrowers." SEC Application at 2.

According to the SEC, the present investigation began after the Federal Home Loan Bank Board indicated that some "brokered" certificates of deposit may have been sold to investors without sufficient disclosure. MDA questions whether this is the true reason for the investigation; it believes that the SEC is actually looking for evidence that the certificates of deposit placed

---

1. 17 C.F.R. 240.106–5 (1975).

2. The two subpoenas do differ, however. The present one calls for the production of books, records and documents dating from January 1, 1974 to the present; the earlier one covered an additional two year period.

by MDA are investment contracts and therefore securities subject to the registration requirements of section 5 of the Securities Act and section 12 of the Securities Exchange Act, 15 U.S.C. § 78*l*. MDA contends that such an investigation would exceed the authority of the SEC because certificates of deposit are exempted from the registration requirements of the securities acts.[3]

■ To enforce the subpoena, the SEC must demonstrate that its investigation is relevant to a legitimate purpose, that it does not already possess the information it seeks and that it has followed the appropriate "administrative steps." *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Although MDA contends that the SEC could obtain the information it has demanded from at least two other companies currently within its jurisdiction or the banks and savings and loan associations concerned, this hardly constitutes an assertion that the information is already known to the SEC. There has also been no suggestion that the SEC failed to follow the proper procedure in issuing its subpoena. Thus, the court need only consider whether the investigation proposed is relevant to a legitimate purpose.

■■ The exemption of certain classes of securities from the operation of the Securities Act does not extend to section 17, the anti-fraud provision. The SEC may therefore explore the possibility of fraudulent acts or omissions by MDA even if brokered certificates of deposit are otherwise exempt as MDA contends. Indeed, even if the goal of the investigation were to demonstrate that violations of the registration requirements had occurred, the court would permit the investigation to proceed. It is for the agency, and not the district court, to determine in the first instance whether viola-

tions may fall within the coverage of the securities acts. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Securities and Exchange Commission v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974).

> "[I]t has long been settled that such issues are not to be decided in subpoena enforcement actions. The Commission must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority." *Brigadoon Scotch Distributing Co., supra*, at 1052–53.

Should the SEC attempt to regulate MDA in the future as a result of its present investigation, its jurisdiction to do so may then be challenged. To consider the question now would be premature. See *Newmark v. Wirtz*, 330 F.2d 576, 578 (2d Cir. 1964).

■ MDA, by the affirmation of its attorney, notes derisively that the SEC is engaged in "nothing but a 'fishing expedition' which should not be countenanced by the court." It no longer follows, however, that administrative agencies cannot "go fishing" simply because the courts are unable to do so. *United States v. Morton Salt Co.*, 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401 (1949). The SEC may therefore investigate the possible bases for it to exercise regulatory control at the same time that it explores potential violations. *Brigadoon Scotch Distributing Co., supra*, at 1055.

MDA suggests that it would need to close its doors "during any investigation period" in order to supply the files and records

---

**3.** Securities issued by a bank or a savings and loan association are generally excluded from the operation of subchapter 1 of the Securities Act by section 3, 15 U.S.C. § 77c. Section 12 of

the Securities Exchange Act exempts such securities from the registration requirements otherwise applicable.

sought by the SEC. As a result, it believes that clients of the firm would inevitably learn of the investigation and shy away from future dealings with the firm. This, it concludes, would cause it undue hardship.

It is not enough to limit the scope of the investigation for MDA to show that compliance is not without some costs. MDA must show that the burden imposed is unnecessarily severe. *United States v. Powell, supra,* 379 U.S. 58, 85 S.Ct. 248. It has not made the necessary showing here. The SEC has actually been rather circumspect in drafting the present subpoena. MDA is not required to move its records from their usual location in order to comply and those who deal with the firm will not be contacted directly at this stage of the investigation. The reputation of MDA would be much more likely to suffer injury were the SEC to contact large financial institutions or likely investors directly. *Securities and Exchange Commission v. Wall Street Transcript Corp.,* 422 F.2d 1371, 1381 (2d Cir.), *cert. denied,* 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970).

I conclude that it would not be abusive for this court to compel compliance with the subpoena. MDA is therefore directed to produce the written information demanded of it in the subpoena *duces tecum* within ten days after the entry of this opinion and order.

SO ORDERED.